Lynn L. WAGMAN, et al., Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION,
Defendant.

No. PJM 91–CV–3226.

United States District Court,
D. Maryland.

Feb. 24, 1994.

Andrew P. Zimmer, Arlington, VA, Arthur Wagman, Gaithersburg, MD, for plaintiffs.

Valerie R. Watts, Elizabeth Mackay, Joseph Thomas, Jr., Thomas & Watts, Baltimore, MD, for defendant.

## OPINION

MESSITTE, District Judge.

### I.

Plaintiff, using an express air carrier, shipped documents which did not arrive the next business day as he had hoped. Because the carrier failed to deliver the documents on that day, the shipper claims losses in the hundreds of thousands of dollars. He has sued the carrier for these losses, notwithstanding that the carrier, through prominent written notices, warned him that its liability in the event of late delivery would be limited to $100.00 and despite the fact that he declared no special value for the documents.

The carrier now moves for partial summary judgment, asking that its liability be capped at $100.00. The Court, based on unanimous authority, grants the carrier's motion.

### II.

Arthur Wagman, a Maryland attorney, was, along with his family, involved in an automobile accident in New Jersey in 1986. On November 26, 1988, with one business day left before New Jersey's statute of limitations was to run, Wagman sought to send a complaint based on the accident to Philadel-

phia attorney I. Sidney Sherwin. Sherwin apparently was to receive the complaint in Philadelphia and immediately file it in federal court in Camden, New Jersey.

Wagman determined to use the services of Federal Express Corporation, an air carrier specializing in the pick-up and delivery of packages to and from various cities. Wagman took his papers to Federal Express' office in Rockville, Maryland, on a Saturday. He alleges he told the Federal Express agent that timely delivery was important and that his complaint had to be filed in Court on November 28 to avoid the statute of limitations. He says he was advised by the agent that the document would arrive by 10:00 a.m. on Monday. Wagman paid approximately eleven dollars for the service. It is undisputed that, on several of the shipping materials provided to Wagman, Federal Express set forth prominently in writing that its liability for non-delivery or late delivery would be sharply limited. The Court reviews the evidence:

1. *THE AIRBILL.* The front of Wagman's airbill (number 8423158995) contained the following language concerning the potential liability of the carrier for failure to timely deliver a package in an undamaged condition:

### SERVICE CONDITIONS, DECLARED VALUE AND LIMIT OF LIABILITY

Use of this airbill constitutes your agreement to the service conditions in our current Service Guide which is available upon request. See back of sender's copy of this airbill for information.

*We will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay or non-delivery, unless you specify a higher amount in the space to the left, pay 40 cents per additional $100 specified and document your actual loss in the event of a claim.* Maximum amount limitations found in the current Federal Express Service Guide apply. Your rights to recover from Federal Express for loss of the intrinsic value of the package, as well as for loss of sales, income, interest, profit, attorney's fees, costs and *any other form of damage*

*whether direct, incidental, consequential or special is limited to the greater of $100 or the declared value specified to the left. In no event shall your recovery exceed your actual loss.* (Emphasis added.)

Immediately to the left of this language appeared a space in which the shipper could declare additional value and incur the resulting higher freight charges. This space on airbill in this case was left blank, indicating Plaintiff did not declare a value.

A further statement of the carrier's limited liability for delivery failures and of the declared value concept appeared on the back of the shipper's copy of the airbill. It provided:

### LIMITATIONS ON OUR LIABILITY AND LIABILITIES NOT ASSUMED

*Our liability for loss or damage to your package is limited to your actual damages or $100, whichever is less, unless you pay for and declare a higher authorized value. We do not provide cargo liability insurance,* but you may pay forty cents for each additional $100 of declared value. If you declare a higher value and pay the additional charge, our liability will be the lesser of your declared value or the actual value of your package. *In any event, we will not be liable for any damages, whether direct, incidental, special, or consequential in excess of the declared value of a shipment, whether or not Federal Express had knowledge that such damages might be incurred including, but not limited to, loss of income or profits* ... (Emphasis added.)

The front of Wagman's airbill reflects that the package was shipped in an "Overnight Letter" envelope. An asterisk beside this designation directed the shipper to the following language: "Declared Value Limit $100.00" This same language concerning Federal Express' maximum limitation of liability of one hundred dollars ($100.00) for any Overnight Letter delivery was reflected on the back of the airbill as follows:

### DECLARED VALUE LIMITS

The highest declared value we allow for Overnight Letter and Courier Pak Over-

night Letter and Courier Pak Overnight Envelope shipments is $100.00 ...

2. *THE FEDEX OVERNIGHT ENVEL-OPE.* The front of the "Overnight Letter," a mailing envelope provided by Federal Express free of charge to its customers, contained the following language highlighted in orange:

Declared Value Limit $100

3. *THE SERVICE GUIDE.* Wagman's airbill referred him to the then-current edition of the Federal Express Service Guide, officially entitled "Federal Express Worldwide Service Guide", which became effective October 1, 1988. The Guide contained these dispositions regarding declared value and limitation of liability:

### DECLARED VALUE AND LIMITS OF LIABILITY

(a) *The declared value of any shipment represents our maximum liability for any loss, damage, delay, mis-delivery, non-delivery. Exposure to losses in excess of the declared value is either assumed by the shipper or transferred to an insurance carrier by the shipper through the purchase of an insurance policy.* The shipper should contact his insurance agent or broker if insurance coverages is desired. We DO NOT provide insurance coverage.

(b) Except as provided in paragraph (f) below, *our liability with regard to any package is limited to the sum of $100* unless a higher value is declared for the package at time of tender, and a greater charge paid as provided in paragraph (c) below.

.       .       .       .       .

(f) Except as provided in paragraph (g) below, *the maximum declared value for any Overnight Letter or Courier–Pak Overnight Envelope package in a shipment is $100. Goods with a value (real or declared) exceeding $100 should NOT be shipped in an Overnight Letter or Courier–Pak Overnight Envelope. Federal Express will not be liable for losses exceeding $100 for shipments in Overnight Letter or Courier–Pak Envelope.* (*Emphasis added.*)

It is thus beyond dispute that Wagman was told multiple times and in straightforward language that the maximum limitation of Federal Express' liability was one hundred dollars ($100.00) for any Overnight Letter Envelope package. He was further advised that Federal Express did not provide insurance coverage and that he should contact his insurance agent or broker if he desired such coverage.

\*       \*       \*

Wagman's document, as fate would have it, did not arrive at Sherwin's office in Philadelphia on November 28. Instead, as a result of some confusion about the correctness of Sherwin's address (whether due to Wagman's error or that of Federal Express is not, for present purposes, important), Federal Express did not deliver the papers until November 29. By then, of course, limitations had run on the Wagman family lawsuit.

The Wagmans thereupon filed the present suit against Federal Express, seeking to recoup the damages they say the carrier caused them to lose by reason of the late delivery of their papers to Philadelphia. The suit proceeds in six Counts: Breach of Contract (Count One), Negligence (Count Two), Fraud (Count Three), Constructive Fraud (Count Four), Fraudulent Misrepresentation (Count Five) and Negligent Misrepresentation (Count Six). The gist of Plaintiffs' claims is that Defendant breached a specific understanding or duty it had with Plaintiff Wagman and that through its national advertising Defendants misled Plaintiffs to their detriment. Defendant's core response is that, notwithstanding all that Plaintiffs allege, Defendant's liability is at most the $100.00 set forth in its contract of carriage.

### III.

█ Federal law determines the liability of interstate common carriers for loss, damage, or delay of goods in transit. *Arkwright–Boston Manfrs. v. Great Western Airlines*, 767 F.2d 425 (8th Cir.1985); *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113 (3rd Cir.1984); *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2nd Cir.1978); *Apart-*

*ment Specialists, Inc. v. Purolator Courier Corp.,* ·628 F.Supp. 55 (D.C.1986). As far back as 1884, the Supreme Court in *Hart v. Pennsylvania Railroad Company,* 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884), stated the rationale:

> "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. *It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier.*" [Emphasis added.]

112 U.S. at 340, 5 S.Ct. at 155.

Several cases have upheld a carrier's limitation of its liability, especially where the shipper has been given reasonable notice of the limitation and an opportunity to pay a higher rate in order to secure greater protection. *See Husman Construction Co. v. Purolator Courier Corp.,* 832 F.2d 459 (8th Cir. 1987); *Cummings v. Purolator Courier Corp.,* 670 F.Supp. 92 (S.D.N.Y.1987); *North American Phillips Corp.,* 579 F.2d at 232–233.

*Husman Construction Co., supra,* presents a case closely analogous to the one at bar. There a construction company sought to send a sealed bid on a construction project to the General Service Administration (GSA), which had set a deadline for the submission of bids. The company engaged Purolator in submitting its original bid and later sent an amendment through Western Union. The shipper declared no value on the Purolator air bill. When both Purolator and Western Union failed to make timely delivery of the materials, the shipper's bid to GSA (which turned out to be the low bid) was not considered, in consequence of which the shipper sued the two entities for lost profits.

Purolator's airbill had clearly indicated that its liability for delay in delivery of a shipment would be limited to the value of the transportation charges for shipment.

The United States Court of Appeals for the Eighth Circuit had little difficulty rejecting plaintiff's claim:

> "... *Nor did Husman pursue an alternative method of sending the bid,* such as certified or registered mail, either of which guarantees that a bid will be considered even if it arrives late, so long as it is postmarked five days before bidding closes. See 48 C.F.R. 14.304–1(a)(1) (1985). *Instead, ignoring the clear and valid limitations of liability in the contract he signed, Husman brought this suit in district court.* No relief will be forthcoming. Those using delivery services to transmit bids are in the best position to procure insurance for their time-sensitive cargo *or to otherwise proceed at their own risk. It is unreasonable to subject a carrier to liability for enormous and unforeseeable consequential damages in return for an $11.75 shipment fee.* See J. Calamari & J. Perillo, Contracts § 14–6, at 598 (3d ed. 1987). As succinctly stated by the Third Circuit in denying relief to a shipper under similar circumstances: 'They made a business judgment when they decided not to explore the possibility of obtaining greater protection from the airline at a higher rate, or even of taking out a policy themselves with an insurance company to .cover their exposure. Having made their bed they must lie in it.' *First Pennsylvania Bank,* 731 F.2d at 1122." (Emphasis added.)

832 F.2d at 462.

■ Federal Express' language of limitation closely parallels that of Purolator in *Husman.* The fact that an employee of the carrier might have assured timely delivery, as Wagman says happened here, makes no difference. Language on the back side of Wagman's airbill specifically indicated that "(n)o one is authorized to alter or modify the terms of our Agreement." Courts have enforced precisely this sort of provision, holding it unreasonable for a shipper to rely upon inconsistent representations by a carrier's agent. *See Kansas State Bank and Trust Company v. Emery Air Freight,* 656 F.Supp. 200 (D.Kan.1987).

■ Similarly, Plaintiffs' effort to cast their action as one for negligence avails them not at all. Actions against a common carrier, whether sounding in contract or tort, are governed by federal law. *See Southeastern*

*Express Co. v. Pastime Amusements,* 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d 1261 (8th Cir.1984); *Deiro v. American Airlines Inc.,* 816 F.2d 1360 (9th Cir.1987). Such law makes the contractual limit of liability applicable regardless of the form in which the action is stated. *Hopper Furs, Inc.,* 749 F.2d at 1264.

■ Nor can Plaintiffs find salvation in their collective claims for misrepresentation based on Federal Express' advertising. Section 105(a)(1) of the Airline Deregulation Act of 1978 (ADA), 49 U.S.C.App. § 1305(a)(1), provides that:

> "[N]o state ... shall enact or enforce any law ... or other provision having the force and effect of law relating to rates, routes or services of an air carrier ..."

In *Morales v. TWA,* — U.S. —, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court held that this statute expressly preempted the National Association of Attorneys General from regulating airline advertising based on their states' general consumer protection laws. Similarly it precludes a state-law claim for misrepresentation based on an air courier's advertising in the present case. *See Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990), cert. den. 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990); *see also Federal Express Corporation v. California Public Utilities Commission,* 936 F.2d 1075 (9th Cir.1991); cert. den. — U.S. —, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992).

Ultimately all of Plaintiffs' causes of action collide with one invincible reality. Language in the air bill, in the FED EX letter envelope and in the carrier's service guide explicitly limited Defendant's liability for failure of delivery, including late delivery, to $100.00. No other value was declared. Since federal law permits carriers to limit their liability thus, the inescapable conclusion is that Plaintiffs can collect $100.00 in this case and not a penny more.

A separate Order will be entered implementing this decision.[1]

---

1. Defendants' request that the Court restrict their liability to $100.00 has been made in the form of a Motion for Partial Summary Judgment. While the Court will grant that Motion, it will also, in order to close the case out, enter final judgment in favor of Plaintiffs in the amount of $100.00. If, for any reason, Defendant does not wish judgment to be entered in favor of Plaintiffs, it shall have leave for 30 days to file a Motion to Vacate that portion of the Court's Order.