**WAINWRIGHT'S VACATIONS, LLC**

**v.**

**PAN AMERICAN AIRWAYS CORP.**

**No. CIV. CCB–99–1145.**

United States District Court,
D. Maryland.

Feb. 8, 2001.

---

Stuart M. Salsbury, Leslie Hayes Russo, Israelson, Salsbury, Clements and Bekman, LCC, Baltimore, MD, Robert M. Beckman, Bode & Beckman, Washington, DC, for Plaintiff.

John R. Fornaciari, Robert M. Disch, Ross and Hardies, Washington, DC, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

This case arises from two contracts in which Defendant Pan American Airways Corporation ("Pan Am") agreed to provide air transportation for customers of Plaintiff Wainwright's Vacations, LLC ("Wainwright's"). In an earlier opinion, the court dismissed several of the original allegations and permitted Wainwright's to proceed on a claim for injurious falsehood. (CCB–99–1145, Memorandum and Order issued February 25, 2000.) That ruling left the injurious falsehood claim and Pan Am's counterclaim for money owed it under the contract to be resolved at trial. On May 23, 2000, however, the court dismissed the complaint with prejudice and entered a default in favor of Pan Am on its counterclaim. (CCB–99–1145, Memorandum and Order issued May 23, 2000.) Wainwright's now moves this court to vacate the entry of default pursuant to Fed. R.Civ.P. 55(c) and to reconsider the dismissal of its complaint pursuant to Fed. R.Civ.P. 60(b). Pan Am opposes this motion and moves the court to enter a judgment by default against Wainwright's. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. The court will grant the plaintiff's motion and vacate both the entry of default and its dismissal of the complaint with prejudice. Accordingly, it will deny Pan Am's motion for entry of judgment by default.[1]

## BACKGROUND

### The Contracts

At the time this lawsuit was filed, Wainwright's was in the business of selling vacation packages which included air transportation, hotel accommodations, and other amenities. Pan Am owned and operated several aircraft that it chartered to tour companies. (Compl. ¶ 1–2.) In January 1999, the parties agreed that Pan Am would provide the air transportation for a series of Las Vegas, NV vacation tour packages to be marketed by Wainwright's. The tours were to originate in Baltimore, MD and Louisville, KY each Monday and Friday from March 5, 1999 to March 6, 2000. (*Id.* ¶ 6; Ex. B, "Feb. 12 Aircraft Charter Agreement," at 8.) Under the agreement, Wainwright's was to pay Pan Am at a stipulated rate for each hour flown. Wainwright's would make advance payments based on estimates of hours to be flown, and, subsequent to the flight, the advance payments would be adjusted ac-

---

1. Wainwright's has also filed a pleading entitled "Plaintiff's Motion to Stay Ruling on Motion of Defendant and Counter–Plaintiff for Entry of Judgment by Default or, in the Alternative to Permit Plaintiff and Counter–Defendant to Engage in Limited Discovery Prior to Ruling on said Motion and to Supplement its Opposition Subsequent to that Discovery." Because the court will vacate the entry of default and deny Pan Am's motion for judgment by default at this time, this motion will be denied.

cording to the actual hours flown and cost of the fuel used. (Feb. 12 Aircraft Charter Agreement § 3.) The parties also agreed that Pan Am would operate a single flight on January 29, 1999 from Dulles Airport in Virginia to Las Vegas via Louisville to serve as an introduction for travel agents to the Las Vegas tour program. (Compl. ¶ 7; Ex. A, "Jan. 28 Aircraft Charter Agreement.") These agreements were codified in two written contracts. One was signed January 28, 1999 and covered the initial, introductory flight; the other, covering the period from March 5, 1999 to March 6, 2000, was signed on February 12. The parties agreed that the contracts would be interpreted according to Florida law. (Jan. 28 and Feb. 12 Aircraft Charter Agreements § 16.)

In addition to incorporating the provisions of the January meeting, the agreement covering the January 29th flight provided that, subject to later reconciliation, Wainwright's would pay Pan Am in advance $11,056 for aircraft fuel. (Jan. 28 Aircraft Charter Agreement at 8.) Wainwright's paid that amount to Pan Am on January 28, 1999. (Compl. ¶ 11.)

The January 29, 1999 flight carried 82 passengers including travel agents on the leg from Louisville to Las Vegas. (Id. ¶ 12.) Pan Am's pilot, Captain David Andersen, had in his possession a fuel certificate issued by Pan Am to use to buy fuel in Louisville. The fuel supplier there, however, would not accept the certificate, as it was addressed to a different supplier that was no longer in business. (Id. ¶ 13.) Captain Andersen informed Pan Am of the problem, and, after a 3.5 hour delay, Pan Am paid for the fuel. (Id. ¶ 15.)

During the delay, Captain Andersen addressed the passengers over the airplane's public address system. He explained that the delay was due to an inability to fuel the plane, that Pan Am was not responsible for the fuel, and that Wainwright's should have paid for it, but had not. Captain Andersen told the passengers that the fuel supplier would not fuel the plane until Wainwright's paid. (Id. ¶ 13.) He also offered to "throw in the first dollar to see who comes closest to the time when Wainwright's decides to pay for our fuel." (Id. ¶ 14.)

On or about February 6, 1999, the vice president for the leisure travel operations of Carlson Wagonlit posted a message regarding Wainwright's on the company's computer network. The following message appeared on the computer screens of all 340 travel agents working for that company in the Louisville area:

I think we should not sell Wainwright. If you have future bookings and can recover the deposit talk to your clients about scheduled air. Just be sure you have a signed disclaimer on every booking. Rhonda said Wainwright took a three hour delay recently because their check for fuel had not arrived and they could not find a credit card to charge the fuel. All of this makes for a not too bright future.

(Id. ¶ 16.) Additionally, Captain Andersen's statements were made known to employees of AMR Service Corporation, the handling agency at Louisville, who allegedly repeated them. (Id. ¶ 17.) According to Wainwright's, these statements caused passengers to cancel their bookings.[2]

The program of round trip Pan Am flights from Baltimore to Louisville to Las Vegas began on March 5, 1999. When the first two flights were late, passengers, travel agents, and personnel from the Louisville handling agency commented that the delay occurred because Wainwright's failed to pay for fuel; in fact, Wainwright's had paid the fuel supplier. (Id. ¶ 19.) This pattern of late departures plagued the program, with frequent delays of several hours. (See id. ¶¶ 21–23, 25–30,

---

2. Wainwright's was not aware of these statements or their effects when it signed the Feb-

ruary 12 contract. (Compl. ¶ 18.)

35.) According to Wainwright's, Pan Am employees repeatedly blamed these delays on a failure by Wainwright's to pay for fuel. (*Id.* ¶¶ 21, 35.) In addition, Pan Am also allegedly told the Atlantic Bank of New York that Wainwright's owed unidentified sums to Pan Am. Wainwright's claims that, as a result, the bank withheld money due to the company. *Id.* ¶ 36. Wainwright's claims that sales dropped from approximately $25,000 per day to approximately $3,000 per day, (*id.* ¶ 31), and that previously supportive travel agents stopped selling Wainwright's tours (*id.* ¶ 20).

On April 7, 1999, Wainwright's received a telefax letter from Pan Am demanding payment of $81,268.00 by noon on April 8, 1999 for "actual block hour flying" and threatening to discontinue service if not paid. Pan Am had not previously informed Wainwright's of the actual block hours flown. (*Id.* ¶ 33.) Neither, however, had Wainwright's paid in advance as was required by the contract. Wainwright's protested the demand for payment by noon the next day, informing Pan Am that its action to strand passengers violated Department of Transportation regulations. Pan Am informed Wainwright's that it would provide air service on April 9, 12, and 16, 1999, but would provide no other service after that date. (*Id.* ¶ 34.)

*The Lawsuit*

On April 23, 1999, Wainwright's sued Pan Am alleging breach of contract, intentional interference with contractual relations, negligent and intentional misrepresentation, and intentional interference with prospective economic advantage. In response, Pan Am counterclaimed seeking more than $242,000 it claimed Wainwright's owed under the contract. Pan Am also stated a claim for unauthorized use of its trademarks and filed a motion to dismiss the complaint. The court granted the motion to dismiss in part; it dismissed the four counts stated by Wainwright's but permitted the plaintiff to proceed on a claim for injurious falsehood. (CCB–99–1145, Memorandum and Order issued February 25, 2000.) At that time, the court also entered a scheduling order requiring, initially, that the parties confer about deposition hours and the appropriateness of a settlement or ADR conference and report back to the court by March 10.

Counsel for Pan Am sent a letter to the court dated March 9 which stated, in relevant part, that he had repeatedly tried to contact counsel for Wainwright's but had been informed that the "plaintiff is in the process of changing counsel in this matter." (Pan Am's Opp., Ex. A.) Accordingly, counsel stated, no agreements had been reached about deposition hours or a settlement conference. At that time, Wainwright's was represented by Robert Beckman, a member of the firm Bode and Beckman, LLP. Mr. Beckman also submitted a letter to the court on March 9. His letter stated:

> Wainwright's Vacations, LLC is out of business. I have advised Mr. Thomas Wainwright, President, that I and my firm must withdraw and I requested the name of substitute counsel which Mr. Wainwright said had been retained. I have made several phone calls to Mr. Wainwright's present office. I failed to make contact and left messages on his voice mail reminding him that I need the name of substitute counsel to file a motion for leave to withdraw.

> Early this week, Mr. Dish diligently telephoned me to remind me of our joint commitments to this Court commencing March 10, 2000. I explained the foregoing to Mr. Dish. I hope that substitute counsel will be appointed promptly.

(*Id.*, Ex. B.) On March 14, Pan Am served upon Bode and Beckman a set of interrogatories and a document request. (*Id.* at 4; Mot. to Compel, Ex. A, B.) Wainwright's has never responded to these discovery requests.

On May 5, the court issued an order in which it stated that the claim and counter-

claims would be dismissed with prejudice unless "any party shows good cause to the contrary no later than May 24, 2000." (CCB–99–1145, Order issued May 5, 2000.) The order was mailed to Mr. Beckman. On May 23, Pan Am entered a memorandum in response to the order to show cause, a motion to compel compliance with its discovery requests, and a request for an entry of default against Wainwright's. That same day, Walter Dozer, the chief financial officer for Wainwright's submitted a letter in which he requested "an extension of at least 30 days in order to finalize [their] legal representation." (Pan Am's Opp., Ex. D.) The letter stated that Mr. Beckman would no longer "perform any services on [the company's] behalf" and that Wainwright's had engaged counsel from a Philadelphia firm who, likewise would not "perform any services because he is not the attorney of record" and because he had not found local counsel in Maryland. (*Id.*) Mr. Beckman and his firm, however, never filed a motion to withdraw.

The court did not receive any further correspondence from Wainwright's. On July 6, therefore, it denied as moot Wainwright's request for an extension and Pan Am's motion to compel, entered default against Wainwright on Pan Am's counterclaim, and dismissed with prejudice the injurious falsehood claim. (CCB–99–1145, Order issued July 6, 2000.) Copies of that order were mailed to Mr. Beckman and Mr. Dozer. The copy mailed to Mr. Dozer was returned as undeliverable.[3] On August 3, Pan Am filed a motion for judgment of default in the amount of $242,185.31 plus pre-judgment interest. By that time, Wainwright's had obtained new counsel. Through that new counsel, Wainwright's filed a motion to vacate the entry of default pursuant to Fed.R.Civ.P. 55(c) and to reconsider the dismissal with prejudice pursuant to Rule 60(b).[4] That

motion and Pan Am's motion for default judgment are currently pending.

### ANALYSIS

Wainwright's asks the court to vacate its entry of default and to reconsider its dismissal of the company's complaint with prejudice. Although there is little discussion of the issue in the parties' memoranda, the two requests must be made pursuant to different Rules of Civil Procedure. Accordingly, they are subject to separate analyses.

### I. The Entry of Default: Rule 55(c)

■ Fed.R.Civ.P. 55(c) states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Because a default has been entered against Wainwright's, but a default judgment has not been issued, the motion to vacate is correctly made pursuant to Rule 55(c) rather than Rule 60(b).

Although the Fourth Circuit has not specifically defined "good cause" in the context of Rule 55(c), it has found that " 'an extensive line of decisions' has held that [Rule 55(c) ] must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.' " *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir.1969)). In addition, other courts of appeal and the district courts in the Fourth Circuit have made it clear that "a somewhat more lenient standard is applied to Rule 55(c) motions ... than to Rule 60(b) motions ...." *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir.1986). *See also Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir.1992) (stating that a Rule 55(c) motion is "more readily granted than a motion to set aside a default judgment");

---

**3.** This mailing was sent to the 104 East Broad Street address.

**4.** In that motion, new counsel advised the court that Mr. Beckman had been ill and had died of a heart attack in July.

*Palmetto Fed. Savings Bank of South Carolina v. Indus. Valley Title Ins. Co.,* 756 F.Supp. 925, 931 (D.S.C.1991), *vac. by agreement of parties,* 1991 WL 832830 (D.S.C. May 15, 1991) ("[R]espect for the finality of judgment dictates that a heavier burden be borne by the defaulting party who is attempting to set aside a default judgment than that which must be borne by a party which is merely in default, but which has not had judgment entered.") (citations omitted); *Broglie v. Mackay–Smith,* 75 F.R.D. 739, 742 (W.D.Va.1977).

■ In *Palmetto,* the District Court for the District of South Carolina traced the Fourth Circuit cases involving Rule 60(b). It determined that "a party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default and provide underlying facts in support of a claim of a meritorious defense." 756 F.Supp. at 931. *See also Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.,* 383 F.2d 249, 251 (4th Cir.1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). In addition, it found that the factors used by the Fourth Circuit in evaluating a Rule 60(b) motion—"the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic"—were useful guidelines in evaluating a Rule 55(c) motion. *Palmetto,* 756 F.Supp. at 931 (quoting *U.S. v. Moradi,* 673 F.2d 725, 728 (4th Cir.1982)). The court agrees with the South Carolina court's assessment and will follow the framework it set out.

■ Rule 55(c) does not provide a specific time limit for the filing of a motion to vacate. Rather, "[w]hether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each occasion ...." *Moradi,* 673 F.2d at 727 (explaining the standard in the context of a Rule 60(b) motion). In this case, the default was entered on July 6th, and Wainwright's moved to vacate it on August 8th. In light of its difficulty obtaining counsel and the lack of assistance from Mr. Beckman, the court concludes that Wainwright's acted reasonably promptly.

■ Wainwright's also satisfies the second prerequisite; it can provide a meritorious defense. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir.1988) *See also Moradi,* 673 F.2d at 727 ("all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). Thus, the moving party does not have to prove conclusively that he would prevail, only that there is sufficient evidence to permit a court to find in his favor. *See, e.g., Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir.1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis."). Although conclusive proof is not required, neither is "a bare allegation of a meritorious defense" sufficient. *Wagman,* 383 F.2d at 252 ("The defendant did no more than state that plaintiff breached the contract, a mere conclusion which fell far short of providing the court with a satisfactory explanation of the merits of the defense.") *See also Maryland National Bank v. M/V Tanicorp I,* 796 F.Supp. 188 (D.Md.1992) (refusing to vacate an entry of default because the defendant had not shown a meritorious defense).

Pan Am argues that neither the claim for injurious falsehood nor the allegations that it chronically operated late provide a meritorious defense to its counterclaim un-

der the contract. (Pan Am's Opp. at 12–15.) The court agrees with that contention. First, the injurious falsehood claim does not in any way relieve Wainwright's of its responsibility to pay Pan Am for services rendered under the airport charter agreements. Second, in its earlier opinion, the court found that the charter agreement contemplated flights being delayed and that it set out contingencies for that situation. (CCB–99–1145, Memorandum and Order issued February 25, 2000.) Further, the court found that neither the delays nor Pan Am's discontinuation of service after Wainwright's refused to pay under the contract provided a basis for a breach of contract action. (*Id.*) Accordingly, they do not provide a defense for the plaintiff's own breach of the contract.

Wainwright's does, however, dispute the amount of the default entered. Specifically, it alleges that Pan Am has included charges for crew, fuel, and hours flown totaling nearly $35,000 for dates on which there were no flights. (Prelim. Opp. at 4–5; *Id.*, Dozer Aff. ¶ 5.) Wainwright's also challenges the invoices for flights that took place after it claims that Pan Am canceled the contract. (*Id.*) Those charges total nearly $88,000. In response, Pan Am argues that the amount in dispute is small relative to the total default and that it was required by FAA regulations to furnish flights after it canceled the contract. (Pan Am's Reply to Prelim. Opp. at 2–5.) It also asks the court to enter a default judgment for $207,392.75, an amount it views as undisputed. (*Id.* at 4.)

The Fourth Circuit has found that a meritorious defense may exist even when the allegations "address the amount, rather than the propriety, of [the] claim...."

*Augusta Fiberglass,* 843 F.2d at 812. In that case, the court found that the defendant had raised a meritorious defense by contradicting the amount claimed by the plaintiff. Wainwright's is in the same situation. The company has raised a viable dispute about the amount it owes Pan Am. The court, therefore, finds that Wainwright's has proffered a meritorious defense under *Augusta Fiberglass.*

■ The court thus is left to consider the four factors set out in *Moradi.* 673 F.2d at 728 ("the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic"). In this case, default was entered against Wainwright's as a result of the company's inability or unwillingness to obtain effective counsel.[5] It is well-settled that, under Rule 60(b), "[w]hen the party is blameless and the attorney is at fault ... a default judgment should ordinarily be set aside. When the party is at fault ... the party must adequately defend its conduct in order to show excusable neglect." *Augusta Fiberglass,* 843 F.2d at 811. *See also Moradi,* 673 F.2d at 728 ("justice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney ....").

Initially, it is clear that Mr. Beckman is at least partially to blame for the default. He sent a letter informing the court that he was going to withdraw as counsel. (Pan Am's Opp., Ex. B.) Wainwright's contends that it did not receive a copy of that letter until it was forwarded by the court. (Pl.'s Reply to Def.'s Opp. at 3.) More importantly, Mr. Beckman never applied for, nor was granted, leave to withdraw by the court.[6] As a result, he remained coun-

---

**5.** According to its Order, the court entered the default against Wainwright's because the company failed to respond to Pan Am's counterclaim or participate in discovery. (CCB–99–1145 Order issued July 6, 2000.) As Wainwright's has indicated in its memoranda, the company did, in fact, file an answer to the counterclaim. It did not, however, make any attempt to participate in discovery. That fail-

ure, independent of its answer to the counterclaim, was sufficient to warrant the entry of default.

**6.** The Local Rules provide that
 [i]n the case of any party other than an individual, including corporations, partnerships, unincorporated associations and government entities, appearance of counsel

sel of record until his death, and his firm remained in the case until the plaintiff's new counsel made its appearance. Mr. Beckman and his firm, however, apparently made no effort to forestall the entry of default or assist Wainwright's in communicating with the court.

Much is made in the parties' memoranda about the diligence with which Wainwright's attempted to obtain new counsel after Mr. Beckman informed the company that his firm would withdraw. (Pl.'s Reply to Def.'s Opp. at 2–6; Pan Am's Opp. at 7–11.) These arguments are made in an attempt to demonstrate that, even if Mr. Beckman was partially to blame for the default, Wainwright's also engaged in "culpable conduct." In the context of Rule 55(c), however, "it is not necessary that the conduct be excusable to qualify for relief under the 'good cause' standard ...." *Shepard Claims,* 796 F.2d at 194. *See also Broglie,* 75 F.R.D. at 742 (finding that under 55(c), "it is not absolutely necessary that the neglect or oversight ... be excusable.").[7] Thus, the fact that Wainwright's may have been somewhat at fault for its omissions in responding to Pan Am's discovery requests does not preclude relief under Rule 55(c).

In considering the remaining factors, the court notes that Pan Am will not be prejudiced unfairly by reopening this case. Aside from arguing that a delay can constitute prejudice, Pan Am has not indicated any way in which it, specifically, would be harmed. (Pan Am's Opp. at 21–22.) That fact coupled with the diligence shown by the plaintiff's new counsel leads the court to conclude that Pan Am will not be unfairly prejudiced if the entry of default is vacated. In addition, the last two factors—a history of dilatory acts and the availability of sanctions less severe—were

not addressed by the parties and do not affect this opinion.

For those reasons, the court will grant the plaintiff's motion to vacate the entry of default. Accordingly, it will deny Pan Am's motion for a default judgment. The court has also considered Pan Am's request that it require Wainwright's to reimburse Pan Am for attorneys' fees and costs associated with the default, post a bond for the amount owed, and file a complete response to its discovery requests. (Pan Am's Opp. at 22–23.) In its discretion, the court finds that, while it will expect Wainwright's to comply fully with discovery in the future, the requested sanctions are not warranted. It will, therefore, deny Pan Am's request.

## II. Dismissal of Wainwright's Injurious Falsehood Claim: Rule 60(b)

Wainwright's has also moved the court to reconsider its dismissal with prejudice of the injurious falsehood claim. The court considers that motion pursuant to Rule 60(b). Before conducting the Rule 60(b) analysis, however, the court must evaluate the underlying claim. That analysis requires the court first to determine the appropriate governing law and then to decide whether Wainwright's can state a claim under that law. Pan Am contends that the court should not grant the motion to reconsider because the claim for injurious falsehood is governed by Kentucky law, and that state does not recognize such a claim. It also argues that the claim is preempted by federal law. The court agrees with Pan Am that Kentucky law governs but concludes that Wainwright's does state a valid claim. Because it also finds that the claim is not preempted, the court will analyze the motion to reconsider under Rule 60(b).

---

may be withdrawn only with leave of the Court and if (1) appearance of other counsel has been entered, or (2) withdrawing counsel files a certificate stating (a) the name and last known address of the client, and (b) that written notice has been mailed to or otherwise served upon the client ....

D. Md. Local Rule 101.2.b.

7. Rule 60(b)(1) allows the court to vacate a final judgment if it finds that the judgment was the result of "mistake, inadvertence, surprise, or excusable neglect ...." This standard is explained more fully below.

*Choice of Law: Injurious Falsehood*

■ Initially, the court must determine which state's law controls its evaluation of the plaintiff's claim.[8] For tort claims, Maryland courts employ the *lex loci delicti* rule which applies the law of the place of the harm. *See Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712, 716 (1997). Pan Am contends, accordingly, that because the captain's statements were made and repeated in Kentucky, that state's law should control. (Pan Am's Opp. at 17.)

In response, Wainwright's relies on the Fourth Circuit's ruling in *Wells v. Liddy*, 186 F.3d 505 (4th Cir.1999), to argue that Pennsylvania law should control. In *Liddy*, the court noted that "[i]n defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." Id. at 521–22. The court continued, however, by stating that where "defamatory content is published simultaneously in multiple state jurisdictions ..., application of the traditional *lex loci delicti* rule becomes cumbersome, if not completely impractical." *Id.* at 527. Because the usual rule would reach an unsatisfactory result, the Fourth Circuit determined that the Maryland Court of Appeals would adopt the rule stated in the Restatement Second of Conflict of Laws. *Id.* at 528. *See also Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md. 2000). The Restatement Second states that,

> (1) The rights and liabilities that arise from defamatory matter in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties ...
> (3) When a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state.

Restatement (Second) of Conflict of Laws § 150 (1971). Wainwright's claims that Pennsylvania law should control because the corporation's principal place of business is in that state.

In relying on this rule, however, Wainwright's fails to identify a single instance in which allegedly defamatory material was published in Pennsylvania. The captain's statements were made on the runway in Louisville; the allegedly defamatory e-mail sent by vice president of Carson Wagonlit traveled to employees in "Kentucky, Indiana, Ohio, and Tennessee" (Pl.'s Reply to Def.'s Opp. at 11); the crew repeated the allegedly defamatory statements on the runway in Las Vegas (*id.*); and the statements were "repeated to Thomas E. Wainwright ... in Indiana" (*id.* at 10). Wainwright's does not allege that any of the comments were uttered in Pennsylvania. The court, therefore, cannot conclude that the law of Pennsylvania should control.

Further, Wainwright's has not alleged separate counts based on the statements that it alleges were made in different states. Thus, the court will apply only one state's law. In making that determination under the Restatement rule, courts have used a "case-by-case balancing test" in which they consider "the state of plaintiff's domicile, the state of plaintiff's principal activity to which the alleged defamation relates, and the state where plaintiff suf-

---

8. In its earlier opinion, the court stated that "[w]hether Maryland law applies to the alleged false statement made by Captain Andersen in Kentucky is not clear but has not been addressed by the parties." (CCB–99–1145, Memorandum and Order issued February 25, 2000.)

fered the greatest amount of harm, as significant factors in deciding the applicable law." *Jewell v. NYP Holdings,* 23 F.Supp.2d 348, 360 (S.D.N.Y.1998). *Abadian,* 117 F.Supp.2d at 486 (quoting *Reeves v. American Broadcasting Companies, Inc.,* 719 F.2d 602, 605 (2nd Cir.1983) and *Ruffin–Steinback v. dePasse,* 82 F.Supp.2d 723, 734 (E.D.Mich.2000)). Because the original statements and several of the repetitions were uttered in Kentucky, and there is no allegation that Wainwright's was defamed in Pennsylvania, the court determines that Kentucky law should be applied to the injurious falsehood claim.

■ That determination, however, does not end the court's inquiry because Pan Am contends that Kentucky does not recognize a claim for injurious falsehood. In making that argument, Pan Am relies on the District Court for the Western District of Kentucky's conclusion that no Kentucky court has ever recognized the tort. *See CMI, Inc. v. Intoximeters, Inc.,* 918 F.Supp. 1068, 1069 (W.D.Ky.1995) ("Although Kentucky's courts have had many opportunities to articulate a new tort such as injurious falsehood, they have failed to do so.").

The court, however, also explained that, although Kentucky courts have not "specifically used the term 'trade libel' or the generic term 'injurious falsehood' to describe an injury resulting to one's products or reputation in general[, they] have generally classified such claims as defamation." *Id.* at 1087 (citing *White v. Hanks,* 255 S.W.2d 602, 603 (Ky.1953) and *Kentucky Fried Chicken v. Sanders,* 563 S.W.2d 8 (1978)). It went on to conclude that, rather than requiring a new tort called injurious falsehood, "Kentucky's current tort law provides the appropriate remedy for which the tort of injurious falsehood was traditionally designed to give." *Id.* at 1088. Indeed,

> the same set of facts which CMI argues is an injurious falsehood also could give rise to claims of defamation, slander of

title, intentional interference with prospective advantage and contractual relations. No one has satisfactorily explained the unfairness addressed by the tort of injurious falsehood, which is not already covered by existing law.

*Id.* at 1089.

■ In determining that Wainwright's had alleged facts sufficient to state a claim for injurious falsehood under Maryland law, this court found that Wainwright's had alleged that: "(1) the defendant published matter derogatory to the plaintiff; (2) the matter was false; (3) the defendant knew the matter was false; (4) the publication played a material and substantive part in inducing others to refuse to deal with the plaintiff; and (5) the plaintiff suffered special damages." (CCB–99–1145, Memorandum and Order issued February 25, 2000.) *See Horning v. Hardy,* 36 Md.App. 419, 373 A.2d 1273, 1278 (1977) (citing *Beane v. McMullen,* 265 Md. 585, 291 A.2d 37, 49 (1972)); *see also National Bd. for Certification in Occupational Therapy, Inc. v. American Occupational Therapy Ass'n,* 24 F.Supp.2d 494, 511 n. 27(D.Md.1998). To state a claim for defamation under Kentucky law, a plaintiff must show that: "(1) the defendants made defamatory remarks (2) concerning the plaintiff (3) which were published and (4) caused injury to her reputation." *Pennington v. Dollar Tree Stores, Inc.,* 104 F.Supp.2d 710, 714 (E.D.Ky.2000) (citing *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 273 (1981)). The pleading requirements overlap and are, if anything, more stringent for the Maryland injurious falsehood claim than they are for the Kentucky defamation claim. The court, therefore, finds that Wainwright's has alleged facts sufficient to state a claim for corporate defamation under Kentucky law.

*Preemption*

■ Pan Am contends that, even if a claim exists under Kentucky law, it is preempted by the Airline Deregulation Act

("ADA"). 49 U.S.C. § 40101, *et seq.* The preemption provision of that Act provides that

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Pan Am argues that the defamation claim is preempted because it is "related to" the provision of a service. (*See* Pan Am's Opp. at 21, "Nothing could be more central to an airline's provision of services than a captain's communications to his passengers on the airplane.")

The Supreme Court has analyzed preemption under the ADA on two occasions. In *Morales v. Trans World Airlines, Inc.,* the Court found that the ADA expressed "a broad pre-emptive purpose," and held that the law preempted the application of general consumer protection statutes to airlines. 504 U.S. 374, 383, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). *See also Wagman v. Federal Express Corp.,* 844 F.Supp. 247, 251 (D.Md.1994), *aff'd* 47 F.3d 1166. It noted, however, that state actions affecting airline prices, routes, or services "in too tenuous, remote, or peripheral a manner" were not preempted. *Id.* at 390, 112 S.Ct. at 2040. The Court reiterated its finding in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In that case, the Court held that claims under the Illinois Consumer Fraud Act were preempted because such actions served "to guide and police the marketing practices of the airlines." *Id.* at 228, 115 S.Ct. at 823.

In neither opinion, however, did the Court address the application of the preemption provision to state law tort actions. Indeed, "[i]n the absence of definitive guidance from the Supreme Court, the Courts of Appeals have struggled with the relationship between the Act's preemption clause and state tort claims." *Taj Mahal Travel, Inc. v. Delta Airlines Inc.,* 164 F.3d 186, 192 (3rd Cir.1998). In its only opinion in this area, the Fourth Circuit found that a plaintiff's contract claim, and some aspects of his false imprisonment and intentional infliction of emotional distress claims, were preempted to the extent that they related to the airline's boarding practices, but not to the extent that they were based on other conduct by the airline. *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir.1998) ("[T]o the extent Smith's claims are based upon Comair's boarding practices, they clearly relate to an airline service and are preempted under the ADA."). In *Comair,* the plaintiff's tort claims were based in part on the airline's refusal to allow him to board an aircraft when he could not provide a photo identification. He conceded that "an airline's boarding practices are properly considered a 'service' under … the ADA." *Comair,* 134 F.3d at 259. Also, the court based its preemption decision in part on the fact that

> when Congress deregulated the airline industry in 1978 by passing the ADA, it retained statutory provisions granting broad discretion to airlines in making safety-related boarding decisions.... The current version of that statute provides, in part: *"Permissive refusal.—* Subject to regulations of the Administrator, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b). Air travel in modern society presents formidable safety and security concerns and often passengers with criminal intentions are the source of that threat. Federal law—in conjunction with its broad preemption of state-law claims related to airlines' services—appropriately grants airlines latitude in making decisions necessary to safeguard passengers from potential security threats. Section 44902(b) recognizes airlines' boarding

practices as a specific area of federal concern.

*Id.* at 257–58. The defamation claim stated by Wainwright's does not invoke these safety concerns and does not relate to a service that is regulated by the federal government.

The court also finds instructive the Third Circuit's opinion in *Taj Mahal.* In that case, the court found that a claim for defamation filed by a travel agency was not preempted by the ADA. 164 F.3d at 188 ("In this appeal, we determine that the defendant airline's form letter advising a number of passengers that their tickets are considered to be stolen may be defamatory to the plaintiff travel agency that sold the tickets [and] that the preemption provision of the Airline Deregulation Act does not apply to this state tort claim."). The court then explained that Congress enacted the preemption provision "[t]o ensure that the states would not *re*-regulate what Congress had decided to *de* regulate." *Id.* at 191 (emphasis in original) (citing *Morales,* 504 U.S. at 378, 112 S.Ct. at 2033). It concluded that claims for defamation do not invoke this concern and that "a common law tort remedy [would not] frustrate[ ] deregulation by interfering with competition through public utility-style regulation." *Id.* at 194. *See also Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996) (examining the underlying facts of the case in determining that a defamation claim was not preempted).

In this case, Captain Andersen's remarks did not reflect established safety or boarding procedures, were not related in more than a tenuous fashion to rates, routes, or services, and, indeed, were not necessary to carry out any regulated duty.[9] The court, therefore, finds that Wainwright's defamation claim is not preempted.

*Rule 60(b)*

■ Having determined that Wainwright's has stated a valid claim under Kentucky law and that the claim is not preempted, the court will now evaluate the motion to reconsider its dismissal with prejudice pursuant to Fed. R. Civ. Pro. 60(b). In relevant part, that Rule states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and, for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. Pro. 60(b) (2000). Although Wainwright's does not specify a provision of the Rule under which they make their motion, only 60(b)(1) and 60(b)(6) possibly could be applied.[10] In *Pioneer Investment Services, Co. v. Brunswick Associates Ltd. Partnership,* however, the Supreme Court

---

9. Pan Am argues that "[n]othing could be more central to an airline's provision of services than a captain's communications to his passengers on the airplane." (Pan Am's Opp. at 21.) In support of this assertion, Pan Am cites to an FAA regulation which provides that "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." 14 C.F.R. § 91.3. This regulation is not applicable to the facts of this case because Captain Andersen's remarks were not related to his position as captain or to any duty he was required to perform.

10. The Rule also permits the court to alter a final judgment if it finds "(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application ...." Fed.R.Civ.P. 60(b). No allegations have been made to support a ruling under any of those sections.

wrote that "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). *See also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–64, 108 S.Ct. 2194, 2204–05, 100 L.Ed.2d 855 (1988) (stating that Rule 60(b)(6) "should only be applied in 'extraordinary circumstances'") (citing *Ackermann v. U.S.* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Wainwright's cannot make such a showing. Although Mr. Beckman's neglect is partially, if not primarily, to blame for the dismissal, Wainwright's cannot "suggest" that it is faultless. There is some controversy between the parties about the vigor with which Wainwright's sought new counsel. (Pan Am's Opp. at 7–10; Pl.'s Reply to Def.'s Opp. at 2–5.) The court does not involve itself in this dispute. Rather, it concludes that the company could have forestalled the dismissal by communicating with the court or Mr. Beckman more effectively. Mr. Dozer wrote to the court and asked for thirty days in which to obtain new counsel. (Pan Am's Opp., Ex. D.) He did not, however, follow that letter with any communication with either Mr. Beckman or the court. If he had, the court may have resorted to sanctions other than a dismissal with prejudice.

 Thus, Wainwright's is not completely blameless and, therefore, must seek relief under subsection (b)(1). *See Pioneer*, 507 U.S. at 393, 113 S.Ct. at 1497 ("If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable."). In *Pioneer*, when evaluating a claim under the Bankruptcy Rules, the Court rejected the notion that "any showing of fault on the part of the late filer" would defeat a claim of "excusable neglect." *Id.* at 388, 113 S.Ct. at 1494. The Court went on to state that:

at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.'

*Id.* at 394, 113 S.Ct. at 1497–98. Thus, the contention that Wainwright's acted culpably would not, by itself, defeat the Rule 60(b) motion. Rather, the court must determine if the neglect was "excusable." The *Pioneer* Court also provided guidance in that inquiry:

Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. at 1498. Although those factors were explained in the context of the Bankruptcy Rules, they have been applied to motions under the Federal Rules of Civil Procedure including Rule 60(b)(1). *See, e.g., Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533–34 (4th Cir.1996) (applying the *Pioneer* criteria to Fed.R.Civ.P. 4); *Robb v. Norfolk & Western Railway Co.*, 122 F.3d 354, 360–62 (7th Cir.1997) (applying *Pioneer* to Rule 60(b)(1)); *In re Cendant Corp. Prides Litigation*, 234 F.3d 166, 170–72 (3rd Cir.2000) (same); *Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877, 879 (5th Cir.1998). Thus, the court will consider the factors set out in *Pioneer* in determining whether the plaintiff's neglect was "excusable."

First, as discussed above, Pan Am has not provided any evidence tending to show that it has been prejudiced by the delay in

these proceedings. Second, the delay amounted to only a few months. Wainwright's moved to reopen this case on August 8th, a little more than a month after it was dismissed initially and just under four months after Pan Am originally attempted to begin discovery. This delay will not have an appreciable effect on the judicial proceedings and, as explained above, the court concludes that the delay resulted from Mr. Beckman's conduct and the inability of Wainwright's to obtain new counsel.[11] There has been no evidence that Wainwright's acted in bad faith.

Thus, the court concludes that, in this case, the equities favor vacating the dismissal with prejudice and allowing this case to be resolved on the merits. The court, therefore, will grant the plaintiff's motion to reconsider and vacate its dismissal with prejudice of the complaint.

A separate Order follows.

---

11. Nor did the court impose a firm deadline in response to Mr. Dozer's request for at least 30 days in which to find new counsel.