19063

Sara H. EDWARDS, Respondent, v. Harold FERGUSON, Appellant.

(175 S. E. (2d) 224)

*Messrs. James C. Parham, Jr.,* and *William W. Kehl,* of *Wyche, Burgess, Freeman & Parham,* of Greenville, *for Appellant,*

*Eddie R. Harbib, Esq.,* of Greenville, *for Respondent,*

June 8, 1970.

LITTLEJOHN, Justice.

The defendant, Harold Ferguson, and his liabilty insurer, State Farm Mutual Automobile Insurance Company, moved to set aside a personal injury default judgment in the amount of $25,000 on the ground that the same was taken through mistake, inadvertence, surprise, or excusable neglect pursuant to Section 10-1213 of the Code. The motion was overruled and the defendant appeals.

The defendant argues that the trial judge abused his discretion in refusing the motion.

To determine whether there was an abuse of discretion it is necessary to review the facts which were before the lower court.

On August 6, 1967 the defendant owned a 1955 Studebaker automobile. State Farm Mutual Automobile Insurance Company had issued a liability insurance policy to cover the operation of the car. The insurer was required by law to write the policy in keeping with the assigned risk plan. It was also a certified policy. On that day the defendant, who was a married man, and the plaintiff, who was a married woman not living with her husband, were riding in the Studebaker and had a one car collision resulting in serious personal injuries to both the plaintiff and the defendant. It is in dispute as to which of the two persons was driving the vehicle at the time of the accident. There were no other witnesses to the wreck.

The insured has never reported the accident to State Farm, and it was not until fourteen months after the wreck (on October 2, 1968) that the company received a letter from plaintiff's attorney advising that plaintiff asserted a claim and asking that the company's representative make contact regarding a possible settlement. Thereafter, Mr. Hall, representing State Farm, sought to locate the defendant. He apparently stayed at the home of his parents most

of the time; he was an alcoholic, and hard to catch. It is understandable that no company would write his liability insurance and that he was insured only through the assigned risk plan. On October 9, 1968, Mr. Hall took his written statement which is made a part of the record. Another written statement was taken October 16, 1968. In this statement the defendant stated "prior to meeting Sarah, I had drunk about 2-half-pints of whiskey before meeting Sarah, and from the time we left K-Mart until the accident, I had drunk about half of another half-pint I had in the car. Sarah saw me drinking and I was pretty drunk at the time. We left K-Mart in my car and Sarah was driving at the time. I was just about too drunk to drive." The highway patrolman's official accident report indicates that plaintiff was the driver of the Studebaker at the time of the collision.

A settlement of the case did not develop and on December 2, 1968 a process server served a copy of the summons and complaint in this case on the defendant's father, who, according to the defendant, is unable to read. The case was not filed in the office of the clerk of court until December 24, two days after time for answering had expired. Both the defendant and his father have consistently denied that the summons and complaint were ever served; however, the trial judge has found that service was actually made on the father at the residence, and in addition, on July 21, 1969 the defendant stated that he found a copy of the summons and complaint in his dresser drawer on the same day. It is his statement that he had never seen the papers before that time.

Counsel for plaintiff stated to the court that he orally informed Mr. Hall of State Farm on the phone on December 3, 1968 that summons, notice and complaint had been served on the defendant the previous day. Mr. Hall denies any recollection of this conversation. The trial judge has found that such did take place. No summons and complaint were served upon or given any representative of State Farm until January 10, 1969, when plaintiff's counsel advised Mr. Hall

that the matter was in default and enclosed copies of the pleadings.

On June 12, 1969 the lower court entered judgment in the amount of $20,000 actual damages and $5,000 punitive damages against the defendant, based on allegations that he was the driver. On July 17, 1969 the defendant and State Farm moved to set aside the judgment pursuant to Section 10-1213, which permits the court as a matter of discretion to relieve one from a judgment taken through mistake, inadvertence, surprise or excusable neglect.

The showing before the trial judge on the motion does not include any affidavit of the plaintiff herself. We think that a *prima facie* showing of meritorious defenses was presented to the court: (1) that the defendant was not driving the vehicle, and (2) that even if the defendant was driving the vehicle the plaintiff was guilty of contributory negligence and recklessness.

The case before us is factually different from the many cases cited under Code Section 10-1213. Here we have an assigned risk and a certified policy. Reference is made to Section 46-702(7) (b) (3) as amended in 1963, which, among other provisions, contains one that with respect to a policy issued under the Motor Vehicle Safety Responsibility Act, (*e. g.,* a certified policy), "no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy." State Farm stands in the shoes of the defendant so far as liability is concerned in spite of the fact that the company for fourteen months was completely unaware that the collision had occurred, and in spite of the fact that the defendant has obviously failed to cooperate, to the prejudice of the company.

In the order overruling the motion to set the judgment aside the lower court "recognizes that the possibility of collusion may exist."

This court has held that abuse of discretion arises in cases in which:

" '(1) the judge issuing the order was controlled by some error of law; or (2) where the order, based upon factual, as distinguished from legal, conclusions is without evidentiary support. *Simon v. Flowers,* 231 S. C. 545, 99 S. E. (2d) 391; *Holliday v. Holliday,* 235 S. C. 246, 111 S. E. (2d) 205.' *Brown v. Weathers,* 251 S. C. 67, 70, 160 S. E. (2d) 133, 134 (1968)." We have held that Section 10-1213 should be liberally construed to see that justice is promoted and to strive for disposition of cases on their merits. *Gaskins v. California Ins. Co.,* 195 S. C. 376, 11 S. E. (2d) 439 (1940).

"In determining whether there has been an abuse of discretion all of the facts and circumstances must be evaluated. If the requirements to vacate a judgment are met the judgment should be opened and the defendant permitted to answer. In order to vacate a judgment there must be a showing (1) that the judgment was taken against the defendant through his mistake, inadvertence, surprise or excusable neglect, and (2) that there is a showing of a *prima facie* meritorious defense. *Gaskins v. California Ins. Co., supra.*" *Rochester v. Holiday Magic, Inc.,* 253 S. C. 147, 169 S. E. (2d) 387, 390 (1969).

A review of the entire record in this case convinces us that the trial judge abused his discretion in failing to vacate the judgment. The justice of the case required that the judgment be set aside with leave to the defendant to answer and the issues tried on the merits.

State Farm, on this appeal, also urges that to affix liability on it under an assigned risk, certified policy by reason of a telephone call notifying that a suit was commenced while the insured denied that any process had been served, denied it constitutional due process. Since we have held that the judgment should be vacated and the case tried on its merits, we do not reach this issue.

Reversed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.