671 S.E.2d 87

**Ann F. McCLURG and Steve McClurg, Respondents,**

**v.**

**Harrell Wayne DEATON, and New Prime, Inc., Appellants.**

**No. 4458.**

Court of Appeals of South Carolina.

Heard Oct. 8, 2008.

Decided Nov. 20, 2008.

Rehearing Denied Jan. 27, 2009.

564

Samuel W. Outten, William J. Watkins, Jr., C. Stuart Mauney, Phillip E. Reeves and Jennifer D. Eubanks, all of Greenville, for Appellants.

Donald R. Moorehead, of Greenville, and Cynthia B. Patterson, of Columbia, for Respondents.

HUFF, J.:

Harrell Wayne Deaton and New Prime, Inc. appeal from an order of the trial court denying their motions to set aside a default judgment in favor of Ann F. and Steve McClurg in the amount of $800,000. We affirm.

## FACTUAL/PROCEDURAL HISTORY

Ann McClurg, along with her husband Steve, instituted this action for injuries Ann received as a passenger in a car involved in an August 5, 2002 motor vehicle accident with a truck owned by New Prime and driven by New Prime's employee, Deaton. New Prime was insured by Zurich North America under a commercial trucker's general liability policy containing a $2,000,000 deductible endorsement for liability claims for each accident. Zurich was notified of the accident almost immediately and began investigating the matter shortly thereafter.

In the following month of September 2002, Zurich received a letter of representation from the McClurgs' counsel, beginning a course of contact between Zurich and counsel regarding injuries, medical treatment and settlement negotiations. Deaton left the employment of New Prime in October 2002, a little over two months following the accident, and there was no record of any communication between Deaton and New Prime during this time of negotiation subsequent to Deaton's separation from employment. On April 23, 2004, Zurich received a proposed settlement package from counsel. On June 28, 2004, counsel sent Zurich a letter regarding *"Ann D. McClurg and Steve McClurg v. New Prime and Harrell Wayne Deaton."* The letter requested settlement within the next week and stated, "If I haven't heard from you by that time, I will file suit and serve the Defendant and send you a courtesy copy of the pleadings." On October 6, 2004, counsel sent Zurich another letter, enclosing a copy of a complaint he prepared in the matter and indicating his intent to "proceed to litigation" if the matter was not soon settled. The draft complaint named only Ann McClurg as a plaintiff and New Prime as a defendant, and alleged New Prime was vicariously liable for Deaton's actions and was also liable for its negligent hiring, retention, and training of Deaton. On October 18, 2004,

Zurich contacted counsel, who agreed to delay filing suit while Zurich reviewed the settlement demand. Between November 2004 and June 2005, Zurich and counsel exchanged telephone messages in regard to settlement, but did not reach a final agreement on the matter.

Unbeknownst to Zurich and New Prime, counsel filed a summons and complaint on April 27, 2005, naming only Deaton as a defendant. The complaint was filed on behalf of Ann McClurg, for injuries sustained in the accident, and her husband Steve, for loss of consortium. On May 3, 2005, the South Carolina Department of Motor Vehicles (the Department) received a copy of the summons and complaint pursuant to South Carolina Code Ann. § 15–9–350 and, on that same date, sent a copy of the summons and complaint by certified mail to Deaton at the Texas address listed on the accident report, but it was later returned as "Insufficient Address." On June 27, 2005, the Department again received the summons and complaint and sent the summons and complaint to Deaton via certified mail, this time to a different address in Texas, found through the efforts of a private investigator hired by counsel. This time the return receipt indicated it was received by Deaton, as evidenced by signature. Deaton did not answer or otherwise appear, and an order of default was filed on August 1, 2005. Notice of a damages hearing was sent to Deaton at both Texas addresses, but Deaton again failed to respond or appear. In September 2005, judgment was entered against Deaton in favor of Ann McClurg in the amount of $750,000 and in favor of Steve McClurg in the amount of $50,000 for a total judgment of $800,000.

On October 5, 2005, Zurich contacted counsel's office to determine the status of the settlement negotiations. After counsel's staff would not divulge any information, Zurich contacted New Prime to confirm New Prime had not been served with a summons and complaint in the matter. On October 7, 2005, Zurich received by certified mail a copy of the default judgment entered against Deaton. After the services of several private investigators were engaged, Deaton was finally located on January 23, 2006. On that date, Deaton executed an affidavit denying he was served with a copy of the summons and complaint, or received notice of the entry of default or the default judgment hearing, and stating he did not notify

New Prime or Zurich of the above because he never received notice. Thus, it appears undisputed that neither Zurich nor New Prime was aware a complaint had been filed in the matter until October 7, 2005 when Zurich received a copy of the default judgment entered against Deaton. Notably, on May 11, 2005, after the summons and complaint were already filed by counsel and sent by the Department to Deaton at the first address, counsel continued the path of negotiation with Zurich, sending Zurich an additional medical report concerning the underlying cause of action.

Deaton moved to set aside the default judgment pursuant to Rules 60(b)(1) and 60(b)(3) of the South Carolina Rules of Civil Procedure. New Prime filed a motion to intervene and likewise moved to set aside the judgment pursuant to Rules 60(b)(1) and 60(b)(3). The trial court granted New Prime's motion to intervene, but denied both New Prime's and Deaton's motions to set aside the default judgment. Both New Prime and Deaton made motions for reconsideration pursuant to Rule 59(e), SCRCP, which the trial judge denied with the exception of deleting some language from the order not at issue in this appeal. This appeal followed.

## ISSUES

### A. New Prime's Appeal

1. Did the trial court err in failing to recognize New Prime's status as a party and afford New Prime due process rights?

2. Did the trial court commit an abuse of discretion in denying New Prime relief from judgment based on surprise?

3. Did the trial court commit an abuse of discretion in denying New Prime relief from judgment based on misrepresentation and misconduct by Respondents' attorney?

### B. Deaton's Appeal

1. Did the trial court err in failing to set aside the default judgment when it was procured based on fraud, misrepresentation, or other misconduct inasmuch as Respondents' counsel actively concealed the lawsuit so no defense would be entered?

2.    Did the trial court err in failing to set aside the default judgment under Rule 60, SCRCP, when Deaton demonstrated that he was not properly served with the summons and complaint and that he did not receive notice of the hearing on unliquidated damages?

3.    Should the default judgment be set aside because the actual judgment entered was incongruent with the damages alleged in the pleadings?

## STANDARD OF REVIEW

The decision to grant or deny a motion for relief from judgment lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *BB & T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 502–03 (2006).    Thus, our standard of review limits this court to determining whether the trial court abused its discretion. *Id.* "An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support." *Id.* at 551, 633 S.E.2d at 503

## LAW/ANALYSIS

### A.   New Prime's Appeal

■   New Prime contends the trial court erred in failing to recognize its status as a party to the action after the court granted its motion to intervene, and denying New Prime relief on this basis.   We agree.   Nonetheless, we find the order denying New Prime's motion to set aside judgment must be affirmed on other grounds.

New Prime presented evidence that, based upon a federally mandated MCS–90 Endorsement contained in the applicable insurance policy, any noncooperation/late notice defense which might have been available due to Deaton's failure to notify New Prime of the lawsuit could be completely eliminated, thereby leaving New Prime vulnerable to being responsible for the entire judgment.   The trial court granted New Prime's motion to intervene, recognizing New Prime's large financial interest in the action and possible responsibility for paying the judgment.   Despite this determination by the trial court, it

partially denied New Prime's motion to set aside the default judgment finding, in regard to New Prime's Rule 60(b)(1) motion that New Prime was not a party to the action, and therefore the McClurgs had no legal duty to serve New Prime with the action against Deaton or notify New Prime of the default proceedings against Deaton. The court therefore determined the evidence did not support the relief from judgment based on mistake, inadvertence, surprise or excusable neglect. In regard to New Prime's Rule 60(b)(3) motion, the court found New Prime was not a party to the action and consequently had no legal duty to notify New Prime or Zurich of the lawsuit, and therefore New Prime could not make a Rule 60(b)(3) motion to be relieved from judgment based on fraud, misrepresentation, or other misconduct of an adverse party. We find the trial court erred in holding New Prime was not a party to the action and, because it was not legally entitled to notice or service, could not show entitlement to relief under Rules 60(b)(1) or (3).

Rule 60(b), SCRCP provides in pertinent part as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

. . .

(3) fraud, misrepresentation, or other misconduct of an adverse party.

New Prime was clearly made a party to the action based upon the court's decision to grant its motion to intervene. Therefore, as a party, it was within the trial court's discretion to grant New Prime relief from the final judgment entered if the relief was warranted. Further, the case of *Edwards v. Ferguson*, 254 S.C. 278, 175 S.E.2d 224 (1970) indicates an insurer may, under the proper circumstances, be entitled to an order setting aside a default judgment where the insurer is involved in ongoing negotiations with a claimant but is not informed that the defendant has been served with a summons and complaint.

In *Edwards*, Ferguson and his liability insurer, State Farm Mutual Automobile Insurance Company, moved to set aside a personal injury default judgment on the ground that the same

was taken through mistake, inadvertence, surprise, or excusable neglect. The case involved an August 6, 1967 single-car motor vehicle accident wherein there was a dispute as to whether Ferguson or Edwards was driving the car. Fourteen months after the accident, State Farm received a letter from Edwards' attorney advising of Edwards' claim and requesting negotiation of a settlement. A settlement of the case did not develop, and on December 2, 1968, a copy of the summons and complaint was served on Ferguson's father who, according to Ferguson, was illiterate. The trial court found, however, that service was made on the father and, subsequently, Ferguson acknowledged he found a copy of the summons and complaint in his dresser drawer. On June 12, 1969, the trial court entered judgment against Ferguson and a little over one month later, Ferguson and State Farm moved to set aside the judgment. The trial court denied the motion. On appeal, the supreme court found State Farm "stands in the shoes of [its insured] so far as liability is concerned," and that Ferguson's failure to cooperate prejudiced State Farm. *Id.* at 282, 175 S.E.2d at 226. The court reversed the trial court, finding the trial court abused its discretion in failing to set aside the default judgment on the grounds of mistake, inadvertence, surprise, or excusable neglect. *Id.* at 283, 175 S.E.2d at 226. However, the supreme court further determined there was a prima facie showing of a meritorious defense made by Ferguson.[1]

Here, it is undisputed Zurich, as New Prime's insurer, entered into settlement negotiations with the McClurgs' attorney. In June 2004, counsel sent Zurich a letter in regard to *"Ann D. McClurg and Steve McClurg v. New Prime and Harrell Wayne Deaton,"* thus indicating an intention to file suit against both Deaton and New Prime. The letter further requested settlement within the next week and stated counsel

---

1. In *Edwards,* evidence was presented that Ferguson was intoxicated, that Edwards was aware of his intoxication, and Edwards, not Ferguson, was the person driving the car at the time of the accident. *Edwards,* 254 S.C. at 281, 175 S.E.2d at 225. Accordingly, the supreme court determined a prima facie showing of meritorious defenses was presented to the court: (1) that Ferguson was not driving the vehicle, and (2) that even if the Ferguson was driving the vehicle, Edwards was guilty of contributory negligence and recklessness. *Id.* at 282, 175 S.E.2d at 225.

would file suit and serve the Defendant and send Zurich a courtesy copy of the pleadings. In October 2004, counsel sent Zurich another letter, enclosing a copy of a draft complaint naming only New Prime as a defendant and raising allegations solely against New Prime of vicarious liability for Deaton's actions as well as liability for New Prime's negligent hiring, retention, and training of Deaton.

Based on counsel's conduct and actions, it was reasonable for Zurich and New Prime to believe that any suit filed would include New Prime as a defendant or, at the very least, that counsel would provide Zurich a copy of any pleadings in the matter when filed. Thus, at a minimum, the facts show New Prime was taken by surprise when counsel filed the action solely against Deaton and failed to inform Zurich or New Prime of this action, thereby meeting the surprise or excusable neglect requirement under Rule 60(b)(1). Additionally, given this history of contact and negotiations between counsel and Zurich, most notably the representations made by counsel to Zurich, the conduct of the McClurgs' counsel in failing to simply notify Zurich of the complaint filed against Deaton raises serious concerns for this court and quite possibly satisfies the misrepresentation and misconduct envisioned by Rule 60(b)(3). Accordingly, we believe the trial court committed error in finding the evidence did not, at least, support relief based on mistake, inadvertence, surprise or excusable neglect. Further, we find the trial court erred in its implicit finding that because New Prime was not a party to the initial lawsuit it could not make a Rule 60(b) motion. The *Edwards* case makes clear that a Rule 60(b) motion is properly made by an insurer under such circumstances. Nonetheless, this court is compelled to affirm based on the trial court's determination that New Prime failed to make a showing of a meritorious defense.

Our courts have noted, in determining whether to set aside a default judgment under Rule 60(b), the trial judge should consider the following relevant factors: (1) the promptness with which relief is sought, (2) the reasons for the failure to act promptly, (3) the existence of a meritorious defense, and (4) the prejudice to the other parties. *Tobias v. Rice*, 379 S.C. 357, 366, 665 S.E.2d 216, 221 (Ct.App.2008); *Mictronics, Inc.*

*v. S.C. Dep't of Revenue,* 345 S.C. 506, 510–11, 548 S.E.2d 223, 226 (Ct.App.2001); *Hill v. Dotts,* 345 S.C. 304, 309, 547 S.E.2d 894, 897 (Ct.App.2001); *New Hampshire Ins. Co. v. Bey Corp.,* 312 S.C. 47, 50, 435 S.E.2d 377, 378 (Ct.App.1993). It is clear, however, that a meritorious defense is more than merely a factor to consider under certain 60(b) grounds for setting aside default judgments. In particular, our courts have held that in order to obtain relief from a default judgment under Rule 60(b)(1) or 60(b)(3), not only must the movant make a proper showing he is entitled to relief based upon one of the specified grounds, he must also make a prima facie showing of a meritorious defense. *See Stearns Bank Nat'l Ass'n v. Glenwood Falls, LP,* 373 S.C. 331, 341, 644 S.E.2d 793, 798 (Ct.App.2007) (noting relief from a default judgment under Rule 60(b)(1) is available "upon a showing of excusable neglect and a meritorious defense; case law also directs the trial court to consider the presence or absence of prejudice to the party opposing the motion"); *Schultz v. Butcher,* 24 F.3d 626, 630 (4th Cir.1994) (noting the counterpart Federal Rule of Civil Procedure 60(b)(3) allows the court to relieve a party from a final judgment if an adverse party engages in fraud, misrepresentation, or other misconduct, but the moving party must establish, among other things, that it has a meritorious defense); *Bowers v. Bowers,* 304 S.C. 65, 67, 403 S.E.2d 127, 129 (Ct.App.1991) (affirming the denial of a motion to set aside a portion of an order pursuant to Rule 60(b)(3) based solely on the movant's failure to present a meritorious defense); *Tri–County Ice & Fuel Co. v. Palmetto Ice Co.,* 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990) (holding, to obtain relief from a default judgment pursuant to Rule 60(b)(1), the movant must also show a meritorious defense); *Thompson v. Hammond,* 299 S.C. 116, 119, 382 S.E.2d 900, 903 (1989) (holding, to justify relief under Rule 60(b)(1), SCRCP, a party must establish that he has a meritorious defense and that the judgment was taken against him by mistake, inadvertence, surprise or excusable neglect); *Mitchell Supply Co. v. Gaffney,* 297 S.C. 160, 163, 375 S.E.2d 321, 323 (Ct.App.1988) (noting that the existence of a meritorious defense was a requirement under S.C.Code Ann. § 15–27–130, the precursor to Rule 60(b)(1), SCRCP, that Federal cases interpreting Federal Rule 60(b)(1) require a meritorious defense, and that the South Carolina

Rules of Civil Procedure have not changed this requirement); *Lowe's of Ga., Inc., v. Costantino,* 288 S.C. 106, 108, 341 S.E.2d 382, 383 (Ct.App.1986) (noting movant seeking to vacate judgment under S.C.Code Ann. § 15–27–130 was required to make a prima facie showing of a meritorious defense in order to prevail on a motion to vacate); *Edwards v. Ferguson,* 254 S.C. 278, 283, 175 S.E.2d 224, 226 (1970) (noting, if requirements to vacate a judgment are met the judgment should be opened, and, in order to vacate a judgment, there must be a showing (1) that the judgment was taken against the defendant through his mistake, inadvertence, surprise or excusable neglect, and (2) that there is a showing of a prima facie meritorious defense).

■■■ To establish that he has a meritorious defense, a complainant need not show that he would prevail on the merits, but only that his defense is meritorious. *Thompson v. Hammond,* 299 S.C. 116, 120, 382 S.E.2d 900, 903 (1989).

> [A] meritorious defense need not be perfect nor one which can be guaranteed to prevail at a trial. It need be only one which is worthy of a hearing or judicial inquiry because it raises a question of law deserving of some investigation and discussion or a real controversy as to real facts arising from conflicting or doubtful evidence.

*Id.* (quoting *Graham v. Town of Loris,* 272 S.C. 442, 248 S.E.2d 594 (1978)). A party making a motion under Rule 60(b) has the burden of presenting evidence proving the facts essential to entitle him to relief. *Bowers v. Bowers,* 304 S.C. 65, 67, 403 S.E.2d 127, 129 (Ct.App.1991).

■■ Here, as noted by the trial court, New Prime has failed to make any showing of a meritorious defense. There is no evidence of record, by affidavit or otherwise, to suggest that the accident was the result of anything other than Deaton's negligence. In fact, a review of the record shows New Prime never even raised the issue of a meritorious defense before the trial court. New Prime argues on appeal that it presented compelling evidence of a meritorious defense as to damages based on a judgment award of $800,000 and the fact that the McClurgs had earlier offered to settle the matter for a total of $170,000. A review of the record shows merely an allegation in a Zurich employee affidavit regarding a $170,000 settlement

demand by the McClurgs made in April 2004 and a counterof-fer of $35,000 made by Zurich in October 2004. This allega-tion in the affidavit appears to have been addressed in con-junction with the contention that settlement negotiations were ongoing. Nowhere in the record is there any indication that New Prime raised this to the court as an argument that a meritorious defense existed. Thus, even assuming for the sake of argument that this bare assertion regarding settle-ment negotiations is evidence of a defense to the amount of damages, the argument is not preserved for our review as it was neither raised to nor ruled upon by the trial court. *See Doe v. Doe,* 370 S.C. 206, 217, 634 S.E.2d 51, 57 (Ct.App.2006) (holding when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion to amend, the issue is not presented properly to an appellate court for review).

Because New Prime failed to make the necessary prima facie showing of a meritorious defense required to set aside a judgment under Rules 60(b)(1) and 60(b)(3), the trial court did not commit reversible error in refusing to set aside the default judgment.

## B. Deaton's Appeal

Deaton first contends the trial court erred in failing to set aside the default judgment pursuant to Rule 60(b)(3) when it was procured through fraud, misrepresentation, or other misconduct. He maintains that counsel for the McClurgs agreed to notify Zurich of a lawsuit, but breached that agree-ment, ensuring Zurich would have no reason to hire counsel for him. He also points to counsel's negotiations and commu-nications with Zurich, and the settlement demands made to Zurich over the course of time. Deaton asserts the tactics employed by the McClurgs' attorney were undertaken for the purpose of evading full and fair litigation of the case on the merits. However, Deaton fails to show how counsel's actions and inactions toward Zurich would equate to fraud, misrepre-sentation, or other misconduct toward Deaton. As noted by the trial court, there is simply no evidence the McClurgs' counsel committed any kind of fraud that deprived Deaton of the opportunity to be present or heard in the matter, or that counsel made any misrepresentations to Deaton or engaged in any misconduct toward Deaton. At any rate, Deaton's argu-

ment fails for the same reason that New Prime's fails on this issue. Deaton failed to present any evidence of a meritorious defense.

■ Deaton next maintains the trial court erred in failing to set aside the default judgment under Rule 60, SCRCP, as he "unequivocally demonstrated he was not properly served with the summons and complaint," and did not receive notice of the damages hearing. He asserts, while the McClurgs claim he was properly served pursuant to South Carolina Code Ann. §§ 15–9–350 and 370, Deaton presented evidence by way of his affidavit that he never received the summons and complaint or notice of the damages hearing. He maintains the trial court failed to liberally apply Rule 60(b)(1), SCRCP and ignored Deaton's affidavit because there was not "conclusive proof" that the signature on the return receipt was that of Deaton's. We disagree.

In ruling on Deaton's motion to vacate pursuant to Rule 60(b)(1), the trial court found "Deaton received the Summons and Complaint on June 27, 2005 as evidenced by the signed return-receipt." The trial court noted the return receipt has both the signature and the printed name of "Wayne Deaton." Although Deaton's affidavit states he had not been served with the summons and complaint, implying the signature was not his, the trial court noted Deaton's affidavit failed to indicate that he resided at a different address than that used for service at the time of service. The court determined Deaton had failed to provide the court with "conclusive proof" that the signature on the return receipt was not his. Accordingly, the court held Deaton's reason for his failure to answer the summons and complaint, in light of the evidence produced, did not amount to excusable neglect under Rule 60(b)(1), SCRCP.

Section 15–9–350 of the South Carolina Code provides as follows:

The acceptance by a nonresident of the rights and privileges conferred by the laws in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways, the streets of any incorporated municipality or the public roads of this State or anywhere within this State, or the operation by such nonresident of a motor vehicle on any

such public highways, streets or public roads or anywhere within the State other than as so permitted or regulated shall be deemed equivalent to the appointment by such nonresident of the Director of the Department of Motor Vehicles or of his successor in office to be his true and lawful attorney upon whom may be served all summons or other lawful process in any action or proceeding against him growing out of any accident or collision in which such nonresident may be involved by reason of the operation by him, for him or under his control or direction, express or implied, of a motor vehicle on such public highways, streets or public roads or anywhere within this State. Such acceptance or operation shall be a signification of his agreement that any such process against him shall be of the same legal force and validity as if served on him personally.

S.C.Code Ann. § 15–9–350 (2005). Section 15–9–370 of the code provides in pertinent part:

Service of process upon the Director of the Department of Motor Vehicles, as agent of a: (a) nonresident driver under the provisions of Section 15–9–350 ... shall be made by leaving a copy thereof, with an appropriate fee, in the hands of the Director of the Department of Motor Vehicles or his office and such service shall be sufficient service upon the nonresident if notice of the service and a copy of the process are forthwith sent by certified mail by the plaintiff or the Director of the Department of Motor Vehicles to the defendant and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are appended to the summons or other process and filed with the summons, complaint, and other papers in the cause.

S.C.Code Ann. § 15–9–370 (2005).

The record in this matter shows compliance with the requirements of §§ 15–9–350 and 370. The summons and complaint in this matter was served upon the Department which in turn, as an agent of Deaton, sent notice of the service and a copy of the summons and complaint to Deaton by certified mail. The return receipt from this certified delivery included the signature and hand-printed name of "Wayne Deaton." Deaton's affidavit states that he was not served with the summons and complaint and that he did not receive notice of the entry of default and default judgment hearing in this case,

and indicates what his address was at the time of the accident. It does not, however, indicate the address used for service was incorrect.

■ Our courts have long held that in order to establish that service has been properly effected, the plaintiff need only show compliance with the civil rules on service of process. *McCall v. IKON*, 363 S.C. 646, 652, 611 S.E.2d 315, 317 (Ct.App.2005); *Moore v. Simpson*, 322 S.C. 518, 523, 473 S.E.2d 64, 67 (Ct.App.1996). When these rules are followed, there is a presumption of proper service. *Roche v. Young Bros., Inc. of Florence*, 318 S.C. 207, 211, 456 S.E.2d 897, 900 (1995). The McClurgs showed compliance with the rules, and therefore service was presumptively proper. As previously noted, a party making a motion under Rule 60(b) has the burden of presenting evidence proving the facts essential to entitle him to relief. *Bowers v. Bowers*, 304 S.C. 65, 67, 403 S.E.2d 127, 129 (Ct.App.1991). The trial court made a factual determination, one clearly supported by the evidence, that Deaton did in fact receive the summons and complaint, and his simple denial of the same was insufficient to show mistake, surprise, inadvertence, or excusable neglect. *Cf. Fassett v. Evans*, 364 S.C. 42, 47, 610 S.E.2d 841, 844 (Ct.App.2005) (noting that an officer's return of process creates the legal presumption of proper service that cannot be impeached by the mere denial of service by the defendant). Accordingly, we find no abuse of discretion in the trial court's refusal to set aside the default judgment as to Deaton pursuant to Rule 60(b)(1), SCRCP.

■ Deaton lastly argues the default judgment should be set aside because the actual judgment entered was incongruent with the damages alleged in the pleadings. He contends that included within the court's award for Ann McClurg were damages for "in kind services," and while Steve McClurg requested "in kind services" damages in his loss of consortium claim, Ann McClurg failed to allege such a loss in her complaint.

The first time Deaton raised this argument was in his motion to reconsider. Deaton clearly could have raised the matter in his motion to set aside the default judgment but failed to do so. Accordingly, this issue is not preserved for

review. *See Kiawah Prop. Owners Group v. Pub. Serv. Comm'n,* 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (a party may not raise an issue in a motion to reconsider, alter or amend a judgment that could have been presented prior to the judgment).

## CONCLUSION

For the foregoing reasons, the trial court's order denying New Prime's and Deaton's motions to set aside the default judgment is

**AFFIRMED.**

GEATHERS, J., concurs.

HEARN, C.J., concurs in part and dissents in part.

HEARN, C.J. (concurring in part and dissenting in part):

I respectfully concur in part, and dissent in part. I would reverse the circuit court's denial of Deaton and New Prime's Rule 60(b), SCRCP motion, and remand for a full trial on the merits.

I agree with the majority that the circuit court erred in denying New Prime relief on the basis that it was not a party, after previously granting its motion to intervene. However, I part company with the majority in holding that neither party satisfied the requirement of a meritorious defense under Rule 60(b).

"In determining whether to grant a motion under Rule 60(b), the trial judge should consider: (1) the promptness with which relief is sought, (2) the reasons for the failure to act promptly, (3) the existence of a meritorious defense, and (4) the prejudice to the other party." *Mictronics, Inc. v. S.C. Dep't of Revenue,* 345 S.C. 506, 510–11, 548 S.E.2d 223, 226 (Ct.App.2001). Here, there is no question that New Prime acted promptly in seeking relief under Rule 60(b) as soon as it learned that default judgment had been taken against Deaton. The McClurgs made no showing of how they would be prejudiced if the default judgment were to be set aside, and the law favors the resolution of disputes based upon all parties having their day in court. Thus, the trial court hinged its denial of

relief upon the Appellants' failure to establish a meritorious defense. I would hold this was error.

Under the majority's view, Appellants had to establish a meritorious defense as to liability in order to prevail on their Rule 60(b) motion. I agree there was no showing by Appellants concerning Deaton's lack of responsibility for causing the accident, but I would hold there was evidence of a meritorious defense, provided by the McClurgs' own attorney, which related to the amount of damages. In negotiations with New Prime's carrier, Zurich, which were ongoing prior to and beyond the filing of suit, McClurgs' counsel made a settlement demand of $170,000. I would hold this course of conduct by McClurgs' attorney is sufficient to satisfy Rule 60(b)'s meritorious defense requirement. Although not previously recognized in South Carolina, courts in other jurisdictions have held that in the context of a Rule 60(b) motion, an allegation that the amount of damages could be different from what was awarded under the default judgment, is sufficient to satisfy the meritorious defense requirement. *See e.g. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir.1988); *Wainright's Vacations, LLC v. Pan American Airways Corp.*, 130 F.Supp.2d 712 (D.Md.2001) (applying *Augusta Fiberglass*); *Esteppe v. Patapsco & Back Rivers Railroad*, 2001 WL 604186 (D.Md.2001); *Miller v. Susa Partnership, L.P.*, 2008 WL 660563 (Ohio App. 10th 2008); *Oberkonz v. Gosha*, 2002 WL 31320242 (Ohio App. 10th 2002); *Cook v. Rowland*, 49 P.3d 262 (Alaska 2002); *Syphard v. Vrable*, 141 Ohio App.3d 460, 751 N.E.2d 564 (2001); *Ferguson & Co. v. Roll*, 776 S.W.2d 692 (Tex.App.Dallas 1989, no writ); *The Moving Co. v. Whitten*, 717 S.W.2d 117 (Tex.App.-Houston 1986, writ ref'd n.r.e.) (overruled on other grounds); *Beal v. State Farm Mut. Auto. Ins. Co.*, 151 Ariz. 514, 729 P.2d 318 (Ct.App.1986); *Hertz v. Berzanske*, 704 P.2d 767 (Alaska 1985).

I also disagree with the majority's holding that Appellants did not preserve this issue for appellate review. Our preservation rules exist to ensure that issues argued on appeal were fairly presented and ruled upon at the trial level. McClurgs' counsel's settlement demand was clearly argued to the circuit court and referenced in memoranda and affidavits submitted at the motion hearing. The circuit court held that New Prime

and Deaton failed to make any showing of a meritorious defense. Therefore, I would find this argument was raised and ruled upon, and is thus properly before this court.

I join the majority's serious concern with the conduct of the McClurgs' counsel in the manner in which he pursued this case. While no duty technically existed to notify New Prime or Zurich of the filing of suit against Deaton, the failure to do so under the circumstances of this case compromises the high ethical standards attaching to the practice of law. As the majority points out, the McClurgs indicated in correspondence to Zurich that New Prime would be served as a defendant in the event a settlement could not be reached, stating emphatically: "If I haven't heard from [Zurich] by that time, I will file suit and serve the Defendant and send you a courtesy copy of the pleadings." The maxim that a lawyer's word is his bond is not only a time-honored tradition; it is included as a guiding principle in the South Carolina Bar's Standards of Professionalism.

Moreover, during negotiations, the McClurgs' counsel sent a copy of his proposed complaint to New Prime which showed both New Prime and Deaton as defendants. However, the complaint ultimately served on Deaton made no mention of New Prime as a defendant. Inexplicably, less than a month after filing the complaint against Deaton, McClurgs' counsel appeared to be continuing settlement negotiations with New Prime by sending it an additional medical report.

While the facts presented here—the failure to serve an insurance company where there is a clear and established prior course of dealings between the carrier and the plaintiff— appear to present a novel situation in South Carolina,[2] the Indiana Court of Appeals addressed a similar situation in *McGee v. Reynolds*, 618 N.E.2d 40 (Ind.Ct.App.1993). There, two parties were involved in an automobile accident and

---

2. Neither New Prime nor Deaton has requested this court adopt a rule requiring service on an insurance company under these circumstances; therefore, it is not within our province as an appellate court to do so. *See Langley v. Boyter*, 284 S.C. 162, 181, 325 S.E.2d 550, 561 (Ct.App. 1984) *rev'd on other grounds*, 286 S.C. 85, 332 S.E.2d 100 (1985) ("[A]ppellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked.").

negotiations ensued between the injured party and the at-fault driver's insurance company. When those negotiations reached an impasse, the injured party filed suit against the at-fault party without notifying the insurance company. Similar problems of service arose, and in the meantime, the insurance company made an inquiry as to the claim's status, only to receive no response. Finally, a default judgment was obtained, and after notice of the judgment, the at-fault driver and insurer moved to set aside the according to Rule 60(B)(3).

The *McGee* court affirmed the trial court's decision to grant the at-fault driver's motion to set aside the default judgment where the plaintiff's attorney failed to give notice of the lawsuit to defendant's insurer. *Id.* at 41. The court described the plaintiff attorney's behavior as bad faith and "smack[ing] of chicanery and unfair advantage" which could not be tolerated. *Id.* Further, in reaching its decision, the *McGee* court referenced *Boles v. Weidner,* 449 N.E.2d 288, 290 (Ind.1983) and stated:

> While there is no general duty to inform the defendant's insurer of a lawsuit, in *Boles,* the supreme court concluded the plaintiff's failure to notify the defendant's insurer of the existence of the lawsuit after negotiations had occurred was a valid consideration in determining whether to set aside a default judgment.

*Id.* The *Boles* court had determined that failure to notify the insurer, standing alone, was not enough to justify setting aside the default judgment. However, in *McGee,* the court held that the failure to serve the insurer after negotiations were undertaken, when combined with the attorney's refusal to answer the direct inquiry by the insurance company as to the status of the claim, constituted grounds for relief. *Id.*

The case before us is factually very similar to *McGee.* Here, McClurgs' counsel continued to negotiate with Zurich while filing a complaint against the at-fault driver without notice to New Prime or its carrier, despite his prior written assurance that he would send Zurich a courtesy copy. Additionally, the actual complaint served on Deaton was markedly different from the copy counsel had sent to Zurich, in that New Prime was no longer named as a defendant.

I fully recognize that this court has not been asked to adopt a bright-line rule with respect to service of complaints on carriers where settlement negotiations have been ongoing; nevertheless, counsel's actions in continuing to uphold the appearance of settlement negotiations while simultaneously pursuing a default judgment without notice to Zurich, when coupled with the evidence of a meritorious defense as to damages, certainly warrants the grant of New Prime and Deaton's Rule 60(b) motion.

Accordingly, I concur in part and dissent in part.