# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Kacey Green and Charinrath Green, Respondents,

v.

Mervin Lee Johnson, Petitioner.

Appellate Case No. 2024-000642

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Orangeburg County
James B. Jackson, Jr., Master-in-Equity

---

Opinion No. 28296
Heard June 4, 2025 – Filed August 13, 2025

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Todd Russell Flippin, of Holcombe Bomar, P.A., of Spartanburg, for Petitioner.

David Reynolds Williams and Virginia Watson Williams, both of Williams & Williams, of Orangeburg; and Edgar Mason West, of West Law Firm, P.A., of Moncks Corner, all for Respondents.

---

**JUSTICE JAMES:** This appeal arises from a $1.76 million actual and punitive damage default judgment granted by the Orangeburg County master-in-equity to Kacey Green and Charinrath Green following a motor vehicle accident in which Mervin Johnson, a tractor-trailer driver employed by CDS Transport, Inc., rear-ended the Greens' Tesla on I-26 in Charleston County. The master later reduced the award to $250,000. The parties cross-appealed, and, in an unpublished opinion, the court of appeals vacated the reduced award and reinstated the $1.76 million award. *Green v. Johnson*, Op. No. 2024-UP-024 (S.C. Ct. App. filed Jan. 17, 2024). We affirm in part and reverse in part the court of appeals' decision and reinstate the master's reduced award, with two modifications.

## I.

The accident occurred on February 28, 2018. Johnson, who was employed as a truck driver by CDS Transport, rear-ended the Greens' Tesla three consecutive times on I-26. After the accident, the Greens' counsel and CDS Transport's insurer, Claims Direct Access (CDA), engaged in very limited settlement negotiations. There is no evidence the Greens' counsel agreed to alert CDA or CDS Transport if suit was commenced. In January 2019, the Greens commenced this action against Johnson only. Johnson did not answer or otherwise appear, default was entered by the circuit court on March 8, 2019, and the case was referred to the master. The master held a default judgment damages hearing on May 22, 2019. Because the evidence presented to the master during the default judgment damages hearing is relevant to the damages issue, we will now summarize that evidence.

Mr. and Mrs. Green were the sole witnesses at the hearing. Mr. Green testified his Tesla was traveling at 65 miles per hour and Johnson's truck was traveling at 70-75 miles per hour at the time of the impacts. The Tesla was drivable after the accident. Because Roper Hospital in North Charleston was close to the scene, Mr. Green drove to Roper instead of requesting an ambulance. He and Mrs. Green were seen in the emergency room and released. The Greens received treatment from a Dr. Buncher at Charleston Pain & Rehabilitation, and Mrs. Green had an MRI at another facility. Mr. Green's medical expenses totaled $5,970 and Mrs. Green's medical expenses totaled $6,856. The Greens' Tesla was equipped with cameras, and a video of the accident was introduced into evidence. Mr. Green testified it cost "$3,000 or something" to repair his Tesla. Mr. Green testified that when he sold the

Tesla, he disclosed the damage and had to accept $10,000 less than what the vehicle was otherwise worth.[1]

Both Mr. and Mrs. Green testified about their medical expenses, their injuries, and their treatment.[2]  Mr. Green was thirty-two years old at the time of the hearing with a life expectancy of forty-four years, and Mrs. Green was twenty-eight with a life expectancy of fifty-two years.  Mr. Green testified he suffered neck and back injuries and received treatment from Dr. Buncher from March through May of 2018.  The treatment consisted of electrical stimulation, acupuncture, and deep tissue massage.  Dr. Buncher, who did not testify, prescribed pain killers and muscle relaxers for both Mr. and Mrs. Green.  Mr. Green testified he is "a computer guy" and his job requires him to sit for extended periods, which causes discomfort.  He testified he also experiences a lot of discomfort standing for long stretches.  He testified he and Mrs. Green were, for some period after the accident, sometimes unable to have "relations" because they were in pain.  He testified he is now "able to do my basic functions and stay gainfully employed at my day job."  However, he testified his secondary employment as an Uber driver suffered because he could not tolerate sitting for long periods.  He testified he began a new computer job after the accident at a wage sixty-five percent higher than what he was earning at the time of the accident.  He testified he "expected" additional income of $40,000 in 2018 from his side job as an Uber driver, but he made only $24,000, which he attributed to his injuries.

Mrs. Green is from Thailand and did not speak English well at the time of the hearing, so Mr. Green provided most of the testimony about her injuries and damages.  He testified she has headaches and neck pain, is not as energetic as she was before the accident, and had to leave her job as a waitress.  No evidence of a lost wage claim for Mrs. Green was introduced.  Mr. Green testified Mrs. Green has had "a tracking problem" with one of her eyes since the accident.  She went to an

---

[1] USAA, Mr. Green's insurance carrier, paid for the repairs.  Its subrogation claim was paid by CDA before this action was commenced.  Therefore, only the depreciation claim was presented to the master.

[2] The Appendix (and the Record on Appeal before the court of appeals) contains only part of the hearing transcript.  It includes only part of Kacey Green's testimony, stopping just as he began to testify about his injuries, and it includes none of Charinrath Green's testimony.  After oral argument, the Greens moved to supplement the Appendix with the forty-one pages not originally included.  Johnson objected.  We granted the motion.

eye doctor one time, but Mr. Green did not know what caused the problem. She sustained neck and back injuries and also went to Dr. Buncher during the same time frame as Mr. Green, perhaps slightly longer. She continues to have neck pain and headaches. According to Mr. Green, she was hot tempered before the accident but now has "a lot shorter fuse than before, especially when she's got her headaches." He testified she is less able to do chores, which causes him to have to do more.

During her limited testimony, Mrs. Green testified the collision was very frightening. She testified she sustained a neck injury and suffered frequent headaches. She said she sometimes still has headaches, but not as frequently as she did immediately after the accident, as the treatment from Dr. Buncher helped a lot. She testified she quit her job as a waitress at a Thai restaurant because she could not cater to the customers as her boss expected.

At the close of the hearing, the Greens' attorney requested a property damage award of $10,000 and stated to the master that an Orangeburg County jury would likely award $1,000,000 in actual damages for bodily injury and $750,000 in punitive damages in this case.[3] In a written order, the master granted the exact relief requested and ordered the actual and punitive damages to be divided pro rata according to the Greens' past and expected medical expenses, past and future pain and suffering, and past and future loss of enjoyment of life. The order was entered on June 5, 2019 and served upon CDS Transport and CDA on June 7, 2019. The record does not reflect when or if Johnson was served, so June 7 is the date upon which we rely. CDA or CDS Transport retained counsel for Johnson.[4]

---

[3] Trial courts (including masters and referees) must not base a default damages award on what a local jury might award. The award should be based upon the trial court's reasoned view of the evidence presented and upon applicable law. What a jury might do is irrelevant. If a plaintiff in a default case wants a jury trial, the plaintiff can demand one (provided the suit is an action at law). Also, the fact that a defendant is in default does not, by itself, inflate the "value" of the case. A default damages hearing is not a lottery opportunity.

[4] During oral argument, in response to a question from the Court, counsel for Johnson confirmed he is appearing for Johnson under a reservation of rights as to insurance coverage. In one order, the master surmised CDS Transport might be partially self-insured. Neither point is pertinent to our review of the court of appeals' decision.

## II.

### A.

On June 17, 2019, Johnson moved to dismiss the action for improper service of process (an issue not before us). He moved in the alternative to set aside the entry of default and default judgment under Rules 55(c) and 60(b) of the South Carolina Rules of Civil Procedure, claiming good cause exists to relieve him from default and that his failure to answer was based on excusable neglect. Of critical importance to our decision, Johnson also contended the awards were "out of proportion to the actual damages suffered in this case," and "unreasonable under the circumstances." Johnson has repeated that argument at every stage of this case.

In support of his motion, Johnson submitted the essentially identical affidavits of Breann Richardson, Claims Administrator for CDS Transport, and Nikole Shields, Senior Claims Consultant for CDA. Both Shields and Richardson stated Johnson was diagnosed with a heart condition in November 2018, underwent open-heart surgery which required an extensive recovery, and had not returned to work since then; both also stated Johnson was diagnosed with diabetes in June 2019, "for which he had been hospitalized on multiple occasions." Shields and Richardson stated counsel for the Greens and CDA (through Shields) engaged in settlement negotiations. Both Shields and Richardson stated they reviewed the Tesla video of the accident, characterizing it as "relatively minor," and both said the damage to the Tesla was "relatively minor." There was no court reporter present for the hearing, and the master denied Johnson's motion in a written order filed November 4, 2019. The order did not address Johnson's contention that the $1.76 million award was excessive.

### B.

Johnson timely moved to alter or amend the November 4 order. In his motion, Johnson repeated his Rule 55 and Rule 60 contentions. He also repeated his assertion that the awards were unreasonable in amount and disproportionate to the damages the Greens sustained—which, as just noted, the master did not address in his order. During the hearing of the motion to alter or amend, Johnson argued the Tesla video introduced during the default damages hearing proved the accident was relatively minor and argued the original award was disproportionate to the damages the Greens sustained. Johnson submitted additional evidence in the form of pre-suit correspondence between the Greens' counsel and CDA/CDS Transport, the USAA subrogation claim for property damage, and a photograph taken of the rear of Mr.

Green's Tesla at the accident scene. After hearing argument, the master stated "I think the damages that I previously awarded are too high."

The master issued an order again denying Johnson's motion to be relieved from default; however, the master reduced the joint actual damages award to $190,000 and reduced the joint punitive damages award to $60,000. The master confirmed in his order that he viewed the Tesla video "at the original damages hearing" and that it showed "a relatively minor rear-end collision." As was the case in the original damages order, the master ordered the award to be divided pro rata according to the Greens' past and expected medical expenses, past and future pain and suffering, and past and future loss of enjoyment of life.[5] Without explanation, the master did not include the previous $10,000 award for depreciation to the Tesla. The master cited "Plaintiffs' uncontested medical bills of $12,826,00; and the additional evidence presented at the hearing" as support for the reduced award.

## C.

The Greens moved for reconsideration. Among other things, the Greens argued evidence of pre-suit communications should not have been permitted; the Shields and Richardson affidavits should not have been considered as to damages; and the photograph of the rear of the Tesla was hearsay and lacked foundation. The master denied the motion. The Greens appealed the reduced award and Johnson cross-appealed the master's denial of his motion to set aside the entry of default and the judgment. The court of appeals affirmed the master's denial of Johnson's motion to set aside the default and default judgment, vacated the order reducing damages, and reinstated the original actual and punitive damages awards. We granted Johnson's petition for a writ of certiorari to review the court of appeals' decision.

## III.

"The decision to grant or deny a motion for relief from judgment lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *McClurg v. Deaton*, 380 S.C. 563, 570, 671 S.E.2d 87, 91 (Ct. App. 2008), *aff'd*, 395 S.C. 85, 716 S.E.2d 887 (2011) (citing *BB & T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 502-03 (2006)). "An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support." *BB & T*, 369

---

[5] Save for medical expenses, these elements of actual damages are intangible, and there is no explanation in the record as to why the Greens requested a joint award or how a pro rata calculation can be carried out.

S.C. at 551, 633 S.E.2d at 503 (citing *Tri-County Ice & Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990)).

Likewise, the trial court's decision to amend an order and modify its own damages award lies with the sound discretion of the trial court. Rule 52(b) of the South Carolina Rules of Civil Procedure provides:

> Upon motion of a party made not later than 10 days after receipt of written notice of entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly, and the motion may be made with a timely motion for a new trial. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment.

Johnson's original motion to be relieved from the entry of default and to set aside the default judgment did not specifically cite Rule 52; however, he included in the motion his contention that the original award was "out of proportion" to the damages sustained by the Greens and "unreasonable under the circumstances." Johnson made the motion within the requisite ten-day time frame. Under these circumstances, the master was permitted to determine whether he should reduce the awards. A trial court's decision to amend findings under Rule 52 must be affirmed unless the decision is controlled by an error of law or is based upon factual conclusions that are without evidentiary support. We will review the master's decision to amend the award in section V below.

**IV.**

We first address the court of appeals' holding that the master properly denied Johnson's Rule 55(c) and Rule 60(b)(1) motions. Under *Wham v. Shearson Lehman Bros.* and its progeny, a party seeking relief under Rule 55(c), SCRCP, from an entry of default must establish "good cause" for the entry of default to be lifted. 298 S.C. 462, 465, 381 S.E.2d 499, 501 (Ct. App. 1989). The defaulting party must first provide a satisfactory reason for not timely answering an opposing party's pleading. If a satisfactory reason is given, the trial court must consider the following: (1) the timing of the motion for relief; (2) the degree of prejudice to the nonmoving party if relief is granted; and (3) whether the defaulting party has a "meritorious defense." *Id.* at 465, 381 S.E.2d at 502. To obtain relief from a default judgment under Rule 60(b)(1), SCRCP, the defaulting party must make a more particularized showing of

mistake, inadvertence, surprise, or excusable neglect. To obtain relief from a default judgment under Rule 60(b)(1), the moving party must also show he has a meritorious defense. *Tri-County Ice & Fuel*, 303 S.C. at 242, 399 S.E.2d at 782 (citing *Mitchell Supply Co. v. Gaffney*, 297 S.C. 160, 163, 375 S.E.2d 321, 323 (Ct. App. 1988)).

We agree with the court of appeals Johnson failed to give a satisfactory reason for not answering the complaint. Unlike in *McClurg*, the Greens' counsel did not assure Johnson's employer or insurer he would provide a courtesy copy of the summons and complaint once filed, nor did counsel lead CDS Transport or CDA to believe CDS Transport would be included as a defendant in a suit. *See McClurg*, 380 S.C. at 573, 671 S.E.2d at 92-93 (holding surprise or excusable neglect requirement under Rule 60(b)(1) was met based on history of contact and negotiations between plaintiffs' counsel and defendant's insurer and employer). Also, while a defendant's health issues may, depending on relevant facts, establish a satisfactory explanation, Shields' and Richardson's recitations of Johnson's health issues do not constitute a satisfactory reason for Johnson not answering the complaint. Nor do the affidavits establish mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). Johnson's mother was served with the complaint in January 2019 at their joint residence, but Johnson's heart surgery was in November 2018. He was diagnosed with diabetes after the May 2019 default damages hearing. While technically not necessary, there is no affidavit from Johnson explaining how his health issues affected his ability to answer the complaint.

A central focus of Johnson's Rule 55(c) and Rule 60(b)(1) argument is his contention that the requirement of a meritorious defense is not limited to cases in which the defaulting party has a meritorious defense to fault. Johnson argues a defaulting party can obtain relief from default if he was at fault but demonstrates a meritorious defense to the amount of damages or proximate cause. Here, Johnson did not give a satisfactory reason for not answering the complaint, so perhaps we need not address the meritorious defense question. However, the issue is important and has not been squarely addressed. In *McClurg*, the court of appeals declined to answer this precise question on issue preservation grounds. 380 S.C. at 576, 671 S.E.2d at 94. Dissenting from the preservation holding, then-Chief Judge Hearn added her firm opinion that the question of a meritorious defense extends to the amount of damages. *Id.* at 581, 671 S.E.2d at 97 ("I would hold there was evidence of a meritorious defense . . . which related to the amount of damages.") (Hearn, C.J., concurring in part and dissenting part). A majority of this Court affirmed the issue preservation holding and did not reach the issue. 395 S.C. at 87, 716 S.E.2d at 888. Former Chief Justice Toal concluded the issue was preserved and dissented, agreeing

with Chief Judge Hearn "that a meritorious defense can relate not only to the liability of the defendant, but also to the amount of damages awarded . . . ." *Id.* at 97, 716 S.E.2d at 893 (Toal, C.J., dissenting).

Here, the issue was preserved and is properly before the Court. We agree with Chief Justice Toal and Chief Judge Hearn and hold a party in default can satisfy the meritorious defense requirement under Rule 55(c) and Rule 60(b)(1) by showing he has a meritorious defense as to the amount of damages or proximate cause. This approach will further serve the desired goal of reminding trial courts in default settings to avoid the inflation of damage awards when a defendant is in default and not present for a damages hearing. Of course, if a defendant establishes a meritorious defense that is limited to the amount of damages or proximate cause and the entry of default is then lifted or the default judgment set aside, the defendant can defend only on the amount of damages or proximate cause.

## V.

We now address the court of appeals' reversal of the master's decision to reduce the actual and punitive damages awards. To recap, the master awarded $1.76 million to the Greens. Johnson moved under Rules 55 and 60(b)(1) to be relieved from the entry of default and default judgment and also challenged the amount of the award. In a written order, the master denied relief under Rule 55 or Rule 60 but did not address Johnson's challenge to the amount of the award. In his subsequent motion challenging that order, Johnson again argued the $1.76 million award was "unreasonable and grossly out of proportion" to the $12,826 in medical expenses and property damage, "especially given the fact that there is a video recording of this accident, which appears to show a relatively minor accident and relatively minor damages, if any bodily injury whatsoever."

During the hearing of Johnson's motion, the master stated, "I do think [Johnson has] an argument as to damages, okay. And I think the damages that I previously awarded are too high. And so I'm going to reduce those damages." In the order reducing the award, the master confirmed he reviewed the Tesla video during the <u>original</u> damages hearing and that it showed the accident was relatively minor. The master recognized the "prejudice Defendant would suffer from a damages award disproportionate to the losses alleged and evidenced to the Court" and stated "the Court now amends its calculation of damages that the preponderance of the evidence shows will fairly and adequately compensate Plaintiffs for the injuries they suffered." The master reduced the excessive $1,000,000 actual damages for bodily injury to $190,000 and reduced the excessive punitive damages

award to $60,000.  He did not include the originally-imposed $10,000 award for property damage.

The court of appeals held the master erred in reducing the damages award in response to Johnson's motion to alter or amend because the master relied on evidence Johnson presented for the first time during the hearing of that motion.  The court held the new evidence was available to Johnson and could have been presented when he filed his motion to set aside the default and default judgment.  "A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not."  *Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct. App. 1990).

We hold the master's consideration of any "new evidence" was immaterial because it is clear the $1.76 million award was excessive based on evidence presented during the original damages hearing.  Evidence presented during that hearing included the Greens' combined $12,826 in medical bills; their testimony regarding their injuries; the cost of repair and depreciation of the Tesla; and the Tesla video of the accident.  The Greens compare the reduced actual damages award of $190,000 to their attorney's statement in his demand letter to CDA (the letter being part of the new evidence) that he would recommend to the Greens that they settle the case for $192,390.  The Greens argue these similar numbers reflect the master improperly based the reduced award on that recommendation.  We disagree, as the reduced award also included $60,000 in punitive damages—consequently, the reduced award totaled $250,000, a markedly higher figure than $192,390.  Next, the Greens claim the photograph of the rear of the Tesla produced during the hearing of Johnson's motion to alter or amend improperly impacted the master's decision to reduce the award.  We find any error in the master's consideration of the photograph at that late stage to be harmless, particularly in light of the master's confirmation in the reduced damages order that he viewed the Tesla video "at the original damages hearing" and that it showed "a relatively minor rear-end collision."  The master clearly—and properly—concluded the original awards for bodily injury and punitive damages were egregiously out of proportion to the evidence presented at the default damages hearing.  The reduced awards, while still quite handsome, were within the master's sound discretion.

We hold the master erred in striking the original $10,000 property damage award.  In *Howell v. State Highway Dep't*, 167 S.C. 217, 230, 166 S.E. 129, 133 (1932) (Blease, C.J., concurring), we held a property owner could testify to the value of his real property, to include depreciation.  In *Nelson v. Coleman Co.*, 249 S.C. 652, 660, 155 S.E.2d 917, 921 (1967), we extended that holding to personal property.

## VI.

For the foregoing reasons, we affirm the court of appeals in part, reverse in part, and reinstate the reduced damages award, but we include two modifications. First, on remand, after hearing argument from the Greens, the master is to allocate the $190,000 actual damages award and the $60,000 punitive damages award between the Greens and enter separate judgments in their favor. Second, the master shall add to Mr. Green's share of actual damages an additional $10,000 for his property damage. We also hold the existence of a meritorious defense is not limited to the issue of fault. A party in default can satisfy the meritorious defense requirement under Rule 55(c) and Rule 60(b)(1) by showing he has a meritorious defense as to the amount of damages or proximate cause.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KITTREDGE, C.J., FEW, HILL and VERDIN, JJ., concur.**