745 S.E.2d 90

Elisa NARRUHN, Respondent,

v.

ALEA LONDON LIMITED and Anderson
General Insurance, Defendants,

Of whom Alea London Limited is the, Appellant.

Appellate Case No. 2011–191646.

No. 27270.

Supreme Court of South Carolina.

Heard Jan. 24, 2013.
Decided June 12, 2013.
Rehearing Denied July 25, 2013.

Mark Steven Barrow, William Roberts Calhoun, Jr., and Mark V. Gende, all of Sweeny Wingate & Barrow, of Columbia, for Appellant.

Gene McCain Connell, Jr., of Kelaher Connell & Connor, of Surfside Beach, for Respondent.

Justice BEATTY.

Alea London Limited ("Insurer") appeals the circuit court's denial of its Rule 60(b), SCRCP motion to set aside the order of a special referee that granted Elisa Narruhn ("Narruhn") an assignment of rights in supplemental proceedings held in conjunction with another lawsuit. We affirm as modified.

## I. FACTS

Narruhn brought a lawsuit seeking damages against RKC Entertainment, L.L.C., d/b/a The Red Room ("RKC"), and Ardon Percevial Cato, II ("Cato") after she was shot and injured by Cato while she was a customer at The Red Room, a nightclub in Myrtle Beach. Thereafter, by order of reference, a special referee was directed to conduct supplemental proceedings to determine if there were any assets available to satisfy the judgment. After a hearing, the special referee issued an order granting Narruhn an assignment of any and all rights, including any claims, that RKC might have against Insurer, who had previously issued a liability insurance policy to RKC for The Red Room.

Narruhn then brought the current lawsuit against Insurer and Anderson General Insurance, the producing agency, seeking actual and punitive damages and alleging, *inter alia*, the failure to pay or defend a claim. Insurer filed a Rule 60(b) motion to set aside the order of the special referee granting Narruhn an assignment of rights.[1] The circuit court denied Insurer's Rule 60(b) motion after finding (1) the motion was untimely and not properly before the circuit court because the motion was not made within one year of the date of the order of reference; (2) it was without authority to rule on Insurer's Rule 60(b) motion because it should have been directed to the special referee, not the circuit court; and (3) Insurer had no standing to challenge the special referee's order granting an assignment as it was not a party to the challenged order from which it sought relief. Insurer appealed the circuit court's

---

1. Although Insurer's motion and the circuit court's order are captioned with Narruhn's current action number, both the contents of Insurer's motion and the circuit court's order state the Rule 60(b) motion was directed to the special referee's ruling.

order to the Court of Appeals, and the matter was certified for this Court's review under Rule 204(b), SCACR.

## II. LAW/ANALYSIS

### A. Timeliness

As to the issue of timeliness, we agree with Insurer that the circuit court erroneously considered the date of the order of reference in calculating the timeliness of Insurer's Rule 60(b) motion, rather than the date of the challenged order, which is the special referee's order granting Narruhn an assignment of rights. The special referee's order granting Narruhn an assignment of RKC's rights was filed on March 8, 2010. Insurer's motion challenging that order was made pursuant to the provisions of Rule 60(b)(1) (surprise), (b)(4) (void), and (b)(5) (inequitable) on or about December 10, 2010.

Motions under Rule 60(b)(1), (2), or (3) must be made within a reasonable time, but not later than one year of the order taken, and those under (4) and (5) are subject only to the reasonable time limitation. Insurer's motion was clearly timely under these parameters as it was made well within one year of the date of the special referee's order granting the assignment and within a reasonable time. *See* Rule 60(b), SCRCP ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken."); *BB & T v. Taylor*, 369 S.C. 548, 633 S.E.2d 501 (2006) (stating the decision to deny or grant a motion made pursuant to Rule 60(b), SCRCP is within the sound discretion of the trial judge, which will not be disturbed unless the order of the court is controlled by an error of law or is based on factual findings that are without evidentiary support).

### B. Authority

As to the issue of authority, we find the circuit court did have the authority to rule on Insurer's motion. Since the special referee had already entered a final order regarding the supplemental proceedings as directed under the order of reference, the special referee had no remaining duties to perform, and the matter was properly before the circuit court. Because the Rule 60(b) motion presents a separate matter, it

does not run afoul of the general rule prohibiting one circuit court judge from overruling another. *Cf. Wachovia Bank of S.C. v. Player,* 341 S.C. 424, 535 S.E.2d 128 (2000) (holding where a matter had been referred to the master with finality, but the master had not concluded all of his duties under the order of reference because he had directed a foreclosure yet still needed to conduct the sale and dispose of the surplus fund, the master had the authority to decide a party's Rule 60(b)(4), SCRCP motion).

## C. Standing

■ As to the issue of standing, the circuit court found the Rule 60(b) motion was not properly before it and should, therefore, be denied because Insurer was not a party to the order from which it sought relief. *See* Rule 60(b), SCRCP ("On motion and upon such terms as are just, the court may relieve *a party or his legal representative* from a final judgment, order, or proceeding. . . ." (emphasis added)).

As an initial matter, we question whether Insurer has preserved an objection to the circuit court's ruling on standing. Insurer did not specifically set forth any challenge to this independent basis for the circuit court's denial of the Rule 60(b) motion in its Statement of Issues on Appeal and, although it made an implied reference to standing in the conclusion of its brief, it cited none of the authorities that it belatedly advanced during the oral argument of this matter. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); *id.* Rule 208(b)(1)(D) ("The brief shall be divided into as many parts as there are issues to be argued. At the head of each part, the particular issue to be addressed shall be set forth in distinctive type, followed by discussion and citations of authority.").

In any event, we find the cases and argument advanced by Insurer do not support Insurer's position that the circuit court erred in finding it did not have standing to make a Rule 60(b) motion because it was not a party to the challenged judgment. In *McClurg v. Deaton,* 380 S.C. 563, 671 S.E.2d 87 (Ct.App. 2008), *aff'd* 395 S.C. 85, 716 S.E.2d 887 (2011), the employer of a party filed a motion to intervene in the case, which was

granted, so at the time the employer made a Rule 60(b) motion, it was a party and, as a party, the employer could seek relief from the judgment. Insurer also cited *Edwards v. Ferguson*, 254 S.C. 278, 175 S.E.2d 224 (1970), a case decided prior to the adoption of the SCRCP, for the proposition that a nonparty insurer may petition for relief under Rule 60(b). In *Edwards*, the defendant (Ferguson) *and* his insurance company moved to set aside a default judgment entered against Ferguson on the basis of mistake, inadvertence, surprise, or excusable neglect. Thus, there is no question that the motion was properly before the court as it was being advanced by a party to the judgment, Ferguson, and no issue was raised regarding the insurance company's status. Accordingly, this case does not support Insurer's argument in this regard. Since Insurer has not established that it was a party or the legal representative of a party, it was not entitled to seek relief under the provisions of Rule 60(b). *See Fairchild v. S.C. Dep't of Transp.*, 398 S.C. 90, 107–08, 727 S.E.2d 407, 416 (2012) (stating in interpreting the South Carolina Rules of Civil Procedure, this Court applies the same rules of construction used to interpret statutes, and if a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the court is obligated to follow and to enforce the stated meaning).

The concurring/dissenting opinion concludes Insurer did have standing to bring a challenge by means of a Rule 60(b) motion. The opinion contends the assignment was in error because notice and an opportunity to be heard must be afforded to Insurer before its rights may be affected, citing, *inter alia*, S.C.Code Ann. § 15–39–350 (2005) (governing the examination of debtors of a judgment debtor) and *Johnson v. Service Management, Inc.*, 319 S.C. 165, 168, 459 S.E.2d 900, 902 (Ct.App.1995) (stating where funds are held by a third party, "the funds on deposit could be reached only after the supplementary proceedings were held to examine [the third party] with regard to the account").[2]

---

2. *Johnson* involved an attempt to satisfy a judgment by obtaining funds held in a judgment debtor's bank account. 319 S.C. at 167, 459 S.E.2d at 902. The Court of Appeals explained that funds on deposit, unless put into a special account, "becomes the property of the bank and goes into its general account." *Id.* at 167–68, 459 S.E.2d at 902. "The

■ While we agree in general with the law cited, we find these provisions are not controlling here because they pertain to the merits of the Rule 60(b) motion, such as whether the assignment was valid in the face of an anti-assignment clause and other enumerated defenses (see Section D below), and they do not involve the threshold issue before this Court, namely, the propriety of Insurer's challenge to the assignment by means of a Rule 60(b) motion. Because Insurer does not fall within the plain terms of Rule 60(b), in that Insurer was not a party or the legal representative of a party, Rule 60(b) is not the proper vehicle for any challenge in this regard. That is not to say, however, that Insurer is without recourse. The referee, in making the assignment, referred to it as a "chose in action," [3] and expressly stated Narruhn assumed the rights that RKC might have against Insurer, "*if any*." Moreover, Narruhn stipulated, as she must, at oral argument before this Court that Insurer still retains all of its defenses and rights under the insurance contract. *See, e.g., Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 639–40, 518 S.E.2d 44, 46 (Ct.App.1999) (stating that an assignee generally "stands in the shoes of its assignor" and has the same rights as the assignor (citation omitted)); *Chet Adams Co. v. James F. Pedersen Co.*, 308 S.C. 410, 413, 418 S.E.2d 337, 338 (Ct.App.1992) ("Generally, the assignee of a non-negotiable chose in action takes it subject to all equities and defenses which could have been set up against the assignor at the time

funds on deposit thus are no longer the personal property of the depositor; instead, the depositor has a chose in action against the bank for recovery of the deposit." *Id.* at 168, 459 S.E.2d at 902. The court stated the funds could not be reached through execution and levy, but only through supplemental proceedings. *Id.*

3.  A "chose in action" has been variously defined as (1) "A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort"; (2) "The right to bring an action to recover a debt, money, or thing"; and (3) "Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit." *Black's Law Dictionary* 275 (9th ed.2009). "South Carolina jurisprudence has long recognized that a chose in action can be validly assigned in either law or equity." *Moore v. Weinberg*, 373 S.C. 209, 220, 644 S.E.2d 740, 745 (Ct.App.2007). "In South Carolina a chose or thing in action is statutorily included in one's personal property and is assignable." *Id.* (citation omitted).

of the assignment."); 29 *Williston on Contracts* § 74:47 (4th ed. 2003) ("[T]he assignee of a nonnegotiable chose in action ... takes it subject to all defenses that the obligor may have had against the assignor. . . .").

We note *Johnson* refers to the need for supplemental proceedings, which were held in the current matter with all necessary parties present, and section 15–39–350 speaks in terms of the "discretionary authority" of the court to question a third party when it deems it necessary, as indicated by the statute's use of "may" rather than "shall." [4] Although we need not reach the issue here, it appears the referee did not believe Insurer's approval of the assignment of RKC's rights was required, and we note it is generally held that an assignment *after* a loss has already occurred does not require an insurer's consent. *See* 3 *Couch on Insurance* 3d § 35:8 (2011 Rev. Ed.) ("[T]he great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim. The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity." (footnotes omitted)); 44 Am.Jur.2d *Insurance* § 786 (2003) ("After a loss has been incurred, the claim to recover insurance proceeds may be effectively assigned by the insured."); 17 *Williston on Contracts* § 49:126 (4th ed. 2000) ("As a general principle, a clause restricting assignment [in an insurance policy] does not in any way limit the policy-

---

4. "[U]pon an affidavit that any person or corporation has property of such judgment debtor or is indebted to him in any amount exceeding ten dollars, the judge *may* by an order require such person or corporation, or any officer or member thereof, to appear at a specified time and place and answer concerning such property or indebtedness. The judge *may also, in his discretion,* require notice of such proceeding to be given to any party to the action in such manner as may seem to him proper." S.C.Code Ann. § 15–39–350 (2005) (emphasis added).

holder's power to make an assignment of the rights under the policy ... after a loss has occurred.... It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property."); *see also Young v. Chicago Fed. Sav. & Loan Ass'n,* 180 Ill.App.3d 280, 129 Ill.Dec. 212, 535 N.E.2d 977, 980–81 (1989) ("An insurance policy that is assigned after a claim arises is an assignment of the policy proceeds; such a transaction results in an assignment of a chose in action which does not require the insurer's consent." (citing *Couch on Insurance*)); *Illinois Tool Works, Inc. v. Commerce & Indus. Ins. Co.,* 2011 IL App (1st) 093084, 357 Ill.Dec. 141, 962 N.E.2d 1042 (2011) (same, citing *Young,* 129 Ill.Dec. 212, 535 N.E.2d at 980–81); *Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W.2d 799, 804–05 (Iowa 1973) (rejecting an insurer's contention that an insurance policy was not assignable without its consent, and stating, "[a]fter the loss was incurred, the issue became *not an assignment of the policy,* but the assignment of a chose in action...." (emphasis added)).

## D. Merits

Lastly, to the extent Insurer argues the merits of its Rule 60(b) motion in its brief, i.e., that the special referee erred in granting an assignment of rights to Narruhn,[5] we hold that argument is not properly before this Court since the circuit court denied the motion for reasons related to timeliness, authority, and standing, and we ultimately find no error in the circuit court's decision to deny the motion based on standing. *See Weeks v. McMillan,* 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct.App.1987) ("Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous."). Moreover, the issue of standing was not appealed.

As noted above, however, Insurer has retained all of its defenses and rights under the insurance contract, and said

5. Insurer asserts it was not given notice of the supplemental proceedings, the contract of insurance prohibits an assignment of rights without its consent, the policy was not in effect at the time of the incident as the policy had already been cancelled for nonpayment of premiums, and the policy was void for RKC's violation of the cooperation clause.

defenses and rights will be considered in Narruhn's pending action against Insurer.

## III. CONCLUSION

Based on the foregoing, the circuit court's order denying Insurer's Rule 60(b) motion to set aside the order of the special referee is affirmed as modified.

**AFFIRMED AS MODIFIED.**

HEARN, J., and Acting Justice JAMES E. MOORE, concur.

Acting Chief Justice PLEICONES, concurring in a separate opinion.

KITTREDGE, J., concurring in part and dissenting in part in a separate opinion.

Acting Chief Justice PLEICONES.

I concur in the result here which allows appellant to assert all its rights, including any defenses, in respondent's pending action against appellant. I write separately because while I agree with Justice Beatty that appellant lacked standing to bring this Rule 60(b) motion, I also agree with Justice Kittredge that we should not reach the merits of appellant's anti-assignment argument both because without standing the merits are not before the Court, and because respondent has stipulated that appellant retains all of its defenses and rights under the insurance contract. I therefore concur in the decision to affirm the circuit court's denial of appellant's Rule 60(b) motion.

Justice KITTREDGE.

I concur in part and dissent in part. I respectfully dissent from this Court's advisory opinion concerning the efficacy of the anti-assignment provision in the insurance policy. I otherwise concur in result only because of the stipulation that Appellant Alea London Limited's rights remain fully preserved, notwithstanding the clearly erroneous order of the circuit court denying Rule 60(b), SCRCP, relief. As noted by the majority, "Narruhn conceded at oral argument that [Ap-

pellant] Insurer has retained all of its defenses and rights under the insurance contract."

I write separately because I fundamentally disagree with the suggestion that Appellant lacked standing to challenge the order of the special referee assigning the insured's rights under the policy. I find it breathtaking and a Due Process violation for a court to unilaterally and without notice affect and potentially impair a third party's contract rights and then deny that third party the ability and standing to challenge the court order.[6]

The facts are not in dispute. Elisa Narruhn was injured in a shooting at The Red Room, a Myrtle Beach nightclub. The Red Room is owned by RKC Entertainment, LLC (RKC). Narruhn obtained a default judgment against RKC and sought to enforce the judgment through supplemental proceedings. The matter was referred to a special referee who, at the request of Narruhn, referred to the insurance policy as a "chose in action." With the insurance policy characterized as a chose in action, the special referee believed he had the authority to assign RKC's contract rights under the insurance policy to Narruhn. As stated, this was accomplished without notice to Appellant. This was error.

It is not necessary to decide the correctness of the chose in action designation. Even assuming the insurance policy was properly characterized as a chose in action by the special referee, it was improper to effect an assignment of the insurance policy without notice to Appellant. The law is clear—if an account or asset of a judgment debtor is held by a third party, that account or asset may be reached in supplemental

---

6. I do not understand the majority's suggestion that the issue of Appellant's standing is not preserved, and I do not agree with the majority's finding that "the issue of standing was not appealed." The entire essence of its Rule 60(b), SCRCP, motion was that the special referee's order affected its rights. As asserted in its supporting memorandum, Appellant argued that "Alea London, whose interests were to be affected, should have been provided Notice of Hearing before the Special Referee." In Appellant's final brief to this Court, Appellant referenced the circuit court's order "that [Appellant] may not file a Rule 60 motion because it was not a party[,]" and stated that the "Trial Court's Order errs in construing South Carolina law." A fair reading of this record reeks of Appellant's contention that it has standing to pursue Rule 60(b) relief.

proceedings only after notice and opportunity to be heard is given to the third party. *See Johnson v. Serv. Mgmt., Inc.,* 319 S.C. 165, 167–69, 459 S.E.2d 900, 902–03 (Ct.App.1995) (holding that where funds are held by a third party that are allegedly owed a judgment debtor, "the funds on deposit could be reached only after supplementary proceedings were held to examine [the third party] with regard to the account").

South Carolina Code section 15–39–350 provides:

After the issuing or return of an execution against property of the judgment debtor or of any one of several debtors in the same judgment and *upon an affidavit* that any person or corporation has property of such judgment debtor or is indebted to him in any amount exceeding ten dollars, *the judge may by an order require such person or corporation, or any officer or member thereof, to appear at a specified time and place and answer concerning such property* or indebtedness. The judge may also, in his discretion, require notice of such proceeding to be given to any party to the action in such manner as may seem to him proper.

(emphasis added). Here, no affidavit was presented to the special referee, and Appellant was given no notice and opportunity to appear.

Armed with the assignment, Narruhn filed the underlying action seeking actual and punitive damages for failure to pay or defend a claim. Appellant was served and then learned, for the first time, of the special referee's assignment of RKC's rights under the insurance policy to Narruhn. Appellant filed the Rule 60(b) motion understandably claiming "surprise."[7] I am confident the able circuit judge would have rectified the error of the special referee had he not mistakenly believed that his exercise of jurisdiction would run afoul of the rule prohibiting one circuit judge from overruling another.

This case may well illustrate the reasons why section 15–39–350, as well as basic notions of due process, require the providing of notice and opportunity to be heard to a third party before its rights may be affected. This is so because Appellant attempted to demonstrate in its Rule 60(b) motion

---

7. As Appellant observed in its Rule 60(b) motion, "[t]here was nothing regarding the [special referee's order] which was *not* a surprise." (emphasis in original).

to the circuit court the following: (1) the policy excluded coverage for "all causes of action arising out of an assault and/or battery"; (2) RKC failed to comply with the policy by failing to, among other things, notify Appellant of the Complaint, damages hearing and order of reference to the special referee; and (3) the policy included an anti-assignment provision, "[RKC's] rights and duties under this policy may not be transferred without [Appellant's] written consent except in the cause of death of an individual Named Insured."

With great respect for the majority, I believe it ventures inappropriately into the merits of Appellant's anti-assignment challenge. We are to believe that Appellant, which the majority assumes has no standing because its rights were not affected by the special referee's order, may assert all of its defenses in the underlying action. Yet today, this Court sends an unmistakable message to the trial court that Appellant's reliance on the policy's anti-assignment provision is meritless. The Court speculates that "it appears the referee did not believe [Appellant's] approval of the assignment of RKC's rights was required." I speculate that the referee had no clue that the policy had an anti-assignment provision, for it would not have served the mutual interests of Narruhn and RKC to inform the referee of the terms of the policy. After an extensive discussion indicating that an assignment after a loss has already occurred does not require an insurer's consent, the majority correctly observes that the issue "is not properly before this Court." Does one really expect the trial court to view this issue without regard to the Court's advisory view of the anti-assignment provision? We are doing the same thing the special referee did—prematurely and adversely affecting Appellant's rights. I dissent from the Court's advisory opinion.

Perhaps in recognition of the erroneous rulings of the special referee and the circuit court, Narruhn made her concession at oral argument, acknowledging that Appellant retains all of its rights in the pending action. It is solely because of the stipulation fully preserving Appellant's rights that I otherwise concur in result.